UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MICHIGAN IMMIGRANT RIGHTS CENTER,** et al.,

      Plaintiffs,

vs.

**UNITED STATES DEPARTMENT OF HOMELAND SECURITY,** et al.,

      Defendants.

Case No. 16-cv-14192

Judge John Corbett O'Meara

Magistrate Judge Elizabeth A. Stafford

**PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Statement Regarding Non-Concurrence

Pursuant to L.R. 7.1(a)(1), which requires Plaintiffs to ascertain whether this motion is opposed, Plaintiffs' counsel, Miriam Aukerman, conferred with Christopher Healy, Defendants' counsel, on March 27, 2018, who did not concur.

**********************

Plaintiffs Michigan Immigrant Rights Center, Dr. Geoffrey Alan Boyce, Dr. Elizabeth Oglesby, and the American Civil Liberties Union of Michigan hereby move, pursuant to Federal Rule of Civil Procedure 56, for partial summary judgment, and oppose Defendants' motion for partial summary judgment, on Plaintiffs' claims concerning the sufficiency of Defendants' response to Plaintiffs' requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiffs state as follows:

1.  This case concerns two FOIA requests submitted by Plaintiffs seeking records related to United States Custom and Border Protection's interior enforcement operations in the Detroit Sector. The first FOIA request was submitted on May 21, 2015 and sought records for 2012 to 2014. The second FOIA request was submitted on May 3, 2017 and sought the same records from January 1, 2015 through the date of production.

2.  Both the 2015 and 2017 FOIA requests sought four categories of records:

- Category A: daily apprehension logs;
- Category B: documents showing individual stops and detentions, namely copies of individual I-213 forms ("Record of Deportable/Inadmissible Alien") and I-44 forms ("Report of Apprehension or Seizure");
- Category C: documents related to interior enforcement including policies and procedures; and
- Category D: documents related to complaints.

3.  Only Category A and B documents are at issue in this motion. Plaintiffs are not challenging redactions to the Category C and D documents produced in response to the 2015 FOIA. By agreement of the parties, searches for the 2017 Category C and D documents are proceeding separately, but have not yet been completed. ECF 26, Pg. ID# 463-64.

4.  Defendants have produced redacted copies of Category A documents and redacted samples of Category B documents. The parties have agreed that, in the interest of conserving agency resources, they will first seek judicial resolution of their disputes about the legality of the Category A and B redactions. Once the

Court rules on the legality of the redactions, the remaining documents and

information in Categories A and B will be produced.

5.  Category A concerns apprehension logs, provided as spreadsheets from

which entire columns have been removed. Defendants improperly redacted

location information, including:

- arrest landmarks;
- apprehending officers' assigned stations; and
- event numbers (which are alphanumeric codes that include an abbreviation for the station name).

6.  Category B documents are I-213 forms ("Record of Deportable/Inadmissible

Alien") and I-44 forms ("Report of Apprehension or Seizure").

7.  Defendants have improperly redacted all fields containing location

information on the sample I-213, including:

- location code;
- "at/near" field;
- latitude and longitude;
- name of any non-CBP law enforcement agency involved in the incident, including name of U.S. state if highway patrol/state police;
- event number (which is an alphanumeric code that includes an abbreviation for the station name); and
- location information in the narrative field, such as the location of the initial stop, location of Border Patrol Station involved in incident, location name related to the incident, and location of the jail or Border Patrol Station where the subjects were detained.

8.  Defendants have likewise improperly redacted all fields containing location

information on the sample I-44, including:

- sector[1];
- Border Patrol station involved in incident;
- place of apprehension or seizure;
- latitude and longitude;
- name and address of any non-CBP law enforcement agency involved in the incident, including name of U.S. state if highway patrol/state police;
- event number (which is an alphanumeric code that includes an abbreviation for the station name); and
- location information in the narrative field, such as the location of the initial stop, location of Border Patrol Station involved in incident, location name related to the incident, and location of the jail or Border Patrol Station where the subjects were detained.

9.   Because the disputed location information is not, as Defendants claim, exempt under FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E), it must be disclosed consistent with FOIA's purpose, which is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

WHEREFORE, and for the reasons set forth in the Petitioner's attached memorandum, the Court should deny Defendants' motion for partial summary judgment, grant Plaintiff's cross-motion for partial summary judgment and order production of the disputed geographic information.


Respectfully submitted,

By: /s/Attorneys for Plaintiffs

---

[1] In an email dated March 16, 2018, after Defendants' brief was filed, Defendants indicated that they will no longer withhold the sector name from either the I-213s or I-44s.

4

/s/ Miriam Aukerman
Miriam Aukerman (P63165)
Juan Caballero  (NY Reg. 5517396)
Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
American Civil Liberties Union
Fund of Michigan
1514 Wealthy Street, Suite 201
Grand Rapids, MI 49506
(616)301-0930
maukerman@aclumich.org

/s/ Samuel C. Damren
Samuel C. Damren (P25522)
Corey Q. Wheaton (P80202)
Dykema Gossett PLLP
400 Renaissance Center
Detroit, MI 48243
(313) 568-6519
sdamren@dykema.com
cwheaton@dykema.com

Dated: March 28, 2018

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MICHIGAN IMMIGRANT RIGHTS CENTER, DR. GEOFFREY ALAN BOYCE, DR. ELIZABETH OGLESBY, and AMERICAN CIVIL LIBERTIES UNION OF MICHIGAN,**

     Plaintiffs,

vs.

**UNITED STATES DEPARTMENT OF HOMELAND SECURITY and UNITED STATES CUSTOMS AND BORDER PROTECTION,**

     Defendants.

Case No. 16-cv-14192

Judge John Corbett O'Meara

Magistrate Judge Elizabeth A. Stafford

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

## Contents

TABLE OF CONTENTS ............................................................ ii
TABLE OF AUTHORITIES ...................................................... iii
INTRODUCTION .................................................................... 1
STATEMENT OF FACTS ......................................................... 2
   I.   Little is Known About Border Patrol and the "100 Mile Zone" in Michigan. 2
   II.   Plaintiffs' Freedom of Information Act Requests Seek to Shed Light on the CBP Enforcement Far from the Border. ................................................. 4
   III.   The Parties Dispute Whether Defendants Can Withhold Geographic Information About Where in Michigan Border Patrol Conducts Warrantless Detentions and Searches. ..................................................... 5
   IV.   Location Information Is Routinely Released by Law Enforcement Agencies, Fostering Public Debate and Allowing the Public to Hold Agencies Accountable. ................................................................ 7
   V.   Plaintiffs Have Proposed Two Reasonable Compromises That Allow The Disclosure Of General Geographic Information That Does Not Compromise Law Enforcement Activities. ........................................................ 9
LEGAL STANDARD ............................................................. 11
ARGUMENT ....................................................................... 12
   I.   Defendants Have Not Met Their Burden of Proving that Geographic Markers Are Exempt Under 7(E) ............................................... 12
     A.   The Requirements for an Exemption Under 7(E) ....................... 12
     B.   The Geographic Markers Are Not "Techniques and Procedures" ......... 13
     C.   Defendants Fail to Establish That Disclosure Poses a Reasonable Risk of Circumvention of the Law. ......................................... 16
   II.   Defendants Have Failed to Prove that there is No Segregable Location Information That Can Be Disclosed ....................................... 22
CONCLUSION ..................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 186 (3d Cir. 2007) ....22

*ACLU of San Diego v. United States,* 2017 WL 2889682 (C.D. Cal. Feb. 10, 2017)
.................................................................................................................10

*ACLU v. Dept. of Homeland Security*, 973 F.Supp.2d 306, 318-19 (S.D.N.Y. 2013)
.................................................................................................................14

*Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221,
245 (D.D.C. 2013) .......................................................................................13

*Assassination Archives and Research Ctr. v. Central Intelligence Agency*, 334 F.3d
55, 57 (D.C. Cir. 2003) ................................................................................12

*Bloomberg, L.P. v. Board of Governors of the Fed. Reserve Sys.*, 601 F.3d 143,
147 (2d Cir. 2010) .......................................................................................11

*Carpenter v. United States*, 2017 WL 5890155 (U.S. Oral. Arg., 2017) ...............23

*Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)......................................11

*Detroit Free Press v. Ashcroft*, 303 F.3d 681, 709 (6th Cir. 2002)......................22

*Donovan v. FBI,* 806 F.2d 55, 58 (2d Cir.1986)...............................................22

*Families for Freedom v. U.S. Customs & Border Prot.*, 797 F. Supp. 2d 375, 391
(S.D.N.Y. 2011)...........................................................................................14

*Farm Labor Organizing Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 540
(6th Cir. 2002) ..............................................................................................2

*Ferri v. Bell*, 645 F.2d 1213, 1223–24 (3d Cir. 1981)......................................18

*Gatore v. United States Dep't of Homeland Sec.*, 177 F. Supp. 3d 46, 51 (D.D.C.
2016) .........................................................................................................22

*Hamdan v. U.S. Dep't. of Justice,* 797 F.3d 759, 777-78 (9th Cir. 2015 ...............14

*Jaffe v. CIA*, 573 F.Supp. 377, 387 (D.D.C. 1983)...........................................18

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)...........................17

*Jones v. F.B.I.*, 41 F.3d 238, 244 (6th Cir. 1994) .............................................11

*Living Rivers v. U.S. Bureau of Reclamation,* 272 F.Supp.2d 1313, 1321 (D. Utah
2003) .........................................................................................................14

*Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678,
682 (2d Cir. 2010) .......................................................................................14

*McKinley v. FDIC,* 807 F. Supp. 2d 1, 4 (D.D.C. 2011) ........................................12

*Pub. Employees for Envtl. Responsibility v. EPA*, 978 F.Supp. 955, 962 (D. Colo.
1997)..........................................................................................................18

*Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995) .....................18

*Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 551 (6th Cir. 2001).....................17

*Shapiro v. United States Dep't of Justice*, 239 F. Supp. 3d 100, 115 (D.D.C. 2017)
.................................................................................................................22

*Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38, 47 (D.D.C. 2012)......................18

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 755 (1989)...................................................................................................11

*U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) ...........................11

*U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) ................................................11

*United States v. Brignoni-Ponce*, 422 U.S. 873, 883 (1975)....................................2

*United States v. Flores-Montano*, 541 U.S. 149, 152 (2004) ....................................2

*Wilkinson v. FBI*, 633 F.Supp. 336, 349 (C.D. Cal. 1986) ......................................21

**Statutes**

5 U.S.C. § 552 ........................................................................................... passim

8 U.S.C. §1357(a)(3)................................................................................ 1, 2, 21

**Rules**

8 C.F.R. §287.1(b) ...........................................................................................3

**Constitutional Provisions**

U.S. Const., Am. IV ..........................................................................................2

## INTRODUCTION

This Freedom of Information Act ("FOIA") case concerns the public's right to know about U.S. Customs and Border Protection's ("CBP") practice of treating the entire state of Michigan as a "border zone." CBP's mission is to protect our international borders. Yet, there is reason to believe that CBP not only engages in operations far from the border, but also misuses powers it has to act without a warrant at the border when conducting operations in the interior.

The focus of the dispute between the parties centers on whether CBP can properly withhold geographic information regarding the location of warrantless detentions and searches in Michigan. *Where* CBP operates is critically important because Congress gave CBP extraordinary powers to conduct certain warrantless searches and seizures within a "reasonable distance" of the border in order to prevent unlawful entry. 8 U.S.C. §1357(a)(3). CBP apparently believes that 100 miles from the Canadian border is a "reasonable distance" for Michigan and that the 100 miles should be measured inward from Michigan's Great Lakes shorelines, thus covering the entire state. Plaintiffs filed FOIA requests so the public could learn more. In response, Defendants redacted records to conceal how close or far from the border they operate. Plaintiffs submit that the Freedom of Information Act does not allow CBP to shield from public view information about the extent to which it is conducting unlawful warrantless searches and seizures throughout Michigan.

## STATEMENT OF FACTS

### I.    Little is Known About Border Patrol and the "100 Mile Zone" in Michigan.

The central mission of CBP is to "safeguard America's borders…"[2] Given the special law enforcement concerns at the border, Congress has authorized Border Patrol agents to conduct certain searches and seizures without a warrant within a "reasonable distance" of an international border "for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States."[3] 8 U.S.C. §1357(a)(3). Ordinarily, of course, searches and seizures require a warrant. U.S. Const., Am. IV. However, there is an exception to the warrant requirement for certain searches at international borders because "[t]he Government's interest in preventing entry of unwanted persons and effects is at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004).

The Supreme Court has limited CBP's power to act without a warrant to the "border and its functional equivalents." *United States v. Brignoni-Ponce*, 422 U.S. 873, 883 (1975). *See also Farm Labor Organizing Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 540 (6th Cir. 2002) (noting that the Supreme Court has "cautioned against extending the logic of border enforcement cases to situations removed from the border, where the government interest in immigration policing

---

[2] CBP Mission Statement, available at https://www.cbp.gov/about.
[3] The same statute also provides authority to conduct warrantless searches of private lands within 25 miles of an external boundary. 8 U.S.C. §1357(a)(3).

2

may be less compelling"). Nevertheless, under outdated regulations[4] (pre-dating *Brignoni-Ponce*), CBP can determine what a "reasonable distance" is based on local factors, but that distance shall not be more than 100 air miles from an international border. 8 C.F.R. §287.1(b). This is commonly called the "100 mile zone."

The question of how CBP interprets the 100 mile zone in Michigan, and the extent to which CBP operates far from the border, is a matter of intense public interest.[5] Little information is publicly available, however, regarding the extent to which CBP is conducting warrantless searches and seizures far from the Canadian border. What little information that is available – a map obtained from Border Patrol – purports to show that the entire state of Michigan is within the 100 mile zone. See Exh. A. It appears that CBP has not only set the "reasonable distance" for the entire state of Michigan at the maximum 100 miles, but also has concluded that, if the 100 miles are measured from the Great Lakes shoreline, the entire state qualifies as a border zone within which CBP agents can act without warrants.

---

[4] *See* H.R. REP. No. 186 (1945); S. REP. No. 632 (1945).
[5] *See e.g.* B. Huffman, *Trump's Executive Order On Immigration Could Threaten Some Detroit Communities*, Michigan Radio, Jan. 26, 2017, http://michigan radio.org/post/trumps-executive-order-immigration-could-threaten-some-detroit-communities; R. Maddux, *Over the Line: Border Patrol's Obscure, Omni-present 100 Mile Zone*, Virginia Quarterly Review, Spring 2018, https://www.vqronline. org/reporting-articles/2017/10/over-line; D. Dale, *'Are you a citizen?' To U.S. Border Patrol, the Canadian border is 100 miles wide*, Toronto Star, Feb. 11, 2018, https://www.thestar.com/news/world/2018/02/11/to-the-us-border-patrol-the-canadian-border-is-100-miles-wide.html ; K. Sammin, *When Border Searches Become Unreasonable*, National Review, Feb. 12, 2018, https://www.national review.com/2018/02/border-patrol-warrantless-searches-often-unconstitutional/

## II.    Plaintiffs' Freedom of Information Act Requests Seek to Shed Light on the CBP Enforcement Far from the Border.

It is critical that more information be made publicly available about CBP's extensive but largely opaque interior enforcement operations in Michigan so that the public, policymakers and the courts can assess the extent to which CBP is engaging in non-border searches and seizures without a warrant. 1st Am. Compl., ECF 22, Pg. ID# 281. Therefore, almost three years ago, on May 21, 2015, Plaintiffs submitted a FOIA request seeking records related to the Border Patrol's interior enforcement operations in the Detroit Sector for Fiscal Years 2012 to 2014 ("2015 FOIA", Exh. B).[6] The request sought four categories of records:

- Category A: daily apprehension logs;
- Category B: documents showing individual stops and detentions, namely copies of individual I-213 and I-44 forms;
- Category C: documents related to interior enforcement including policies and procedures; and
- Category D: documents related to complaints.

Only Category A and B documents are at issue in this motion.

On January 12, 2016, almost eight months after Plaintiffs submitted their FOIA request, CBP provided a partial response by releasing redacted apprehension logs under Category A. *See* 1/12/2016 CBP Letter, ECF 28-8, Pg.ID# 846. CBP redacted various fields from the spreadsheets produced, including all location information (e.g. arrest landmark). On February 29, 2016, Plaintiffs appealed the redactions and sought to work out a reasonable production schedule for the remain-

---

[6] For comparison purposes, Plaintiffs also sought a subset of records – the "Category A" apprehension logs – from the Buffalo and Tucson sectors.

4

ing documents. *See* 2/29/2016 Dykema Letter, Exh. C. The parties were unable to resolve these disputes, and Plaintiffs filed suit on November 30, 2016, more than 18 month after Plaintiffs submitted their FOIA request. ECF 1, Pg. ID# 1-128.

Given the significant delays in Defendants' response to Plaintiffs' May 2015 FOIA and the growing staleness of the information requested, Plaintiffs submitted a second FOIA, dated May 3, 2017 ("2017 FOIA", Exhibit D). The 2017 FOIA sought records from the same four categories requested in the 2015 FOIA, but for the period from January 1, 2015 through the date of production. *Id.* By agreement of the parties, Plaintiffs filed an Amended Complaint incorporating both the 2015 and 2017 FOIAs. ECF #22, Pg. ID# 280-428.

### III.    The Parties Dispute Whether Defendants Can Withhold Geographic Information About Where in Michigan Border Patrol Conducts Warrantless Detentions and Searches.

The parties have resolved many of the issues in this litigation and have thereby narrowed the question before this Court to whether Defendants properly redacted location information from Category A and B documents.[7]

Category A concerns apprehension logs, provided as spreadsheets from which entire columns have been removed.[8] *See* Category A Sample, Exh. E; Lewandowski Decl., ¶ 6, ECF 28-2, Pg.ID# 506. Plaintiffs challenge the redaction

---

[7] Plaintiffs are not challenging redactions to the 2015 Category C and D documents, which have already been produced. Searches for the 2017 Category C and D documents are proceeding separately, and have not yet been completed. ECF 26, Pg. ID# 463-64.

[8] Defendants have agreed to provide Category A documents as searchable Excel files. 3/30/2017 Aukerman/Nestler Email Exchange, Exh. F.

5

of certain columns containing location information[9]: Arrest Landmarks and Apprehending Officers' Assigned Stations, and Event Numbers.[10]

Category B documents are I-213 forms ("Record of Deportable/Inadmissible Alien") and I-44 forms ("Report of Apprehension or Seizure"). Defendants have thus far produced a sample of 50 Form I-213s and 50 Form I-44s. ECF 21, Pg. ID# 273. The attached examples highlight the fields whose redactions Plaintiffs challenge. *See* Sample I-213, Exh. G; Sample I-44, Exh. G. Specifically the Defendants have redacted all fields containing location information on the sample I-213, including (1) location code; (2) at/near; (3) event number; (4) arrest coordinates; (5) event number; and (6) location information contained in the narrative description of the incident. On the sample I-44, Defendants have likewise redacted location information, namely (1) Border Patrol sector involved in the incident; (2) Border Patrol station involved in incident; (3) name of Sheriff or Police Department providing assistance; (4) city and state of Sheriff or Police Department providing assistance; (2) place of apprehension or seizure; (3) incident coordinates; (4) event number; and (5) location information in the narrative.

---

[9] Defendants also redacted Ports of Entry for the Tucson Sector. Lewandowski Decl., ¶ 16, ECF 28-2, Pg.ID# 513. Plaintiffs do not object to that redaction.

[10] "Event numbers" are alpha-numerical codes that include an abbreviation of the station name. Lewandowski Decl., ¶ 15, ECF 28-2, Pg. ID# 513. If assigned stations are provided, event numbers may not be necessary.

The parties have agreed they will first seek judicial resolution of their disputes about the legality of the Category A and B redactions before production of the remaining documents and information in those categories. ECF 21, Pg. ID#273.

## IV. Location Information Is Routinely Released by Law Enforcement Agencies, Fostering Public Debate and Allowing the Public to Hold Agencies Accountable.

The type of location information at issue is routinely released by federal and state law enforcement agencies. First, CBP regularly releases copies of I-213s and similar documents without redaction of location information, both to individuals in immigration proceedings and in response to individual FOIA requests. Robinson Decl., Exh. O; Morawetz Decl., Exh. P; Bratlie Decl., Exh. J (TECS records).

Second, DHS has also released large numbers of I-213s and I-44s without redaction of location information in response to other FOIA requests. For example, DHS produced approximately 5,553 pages of I-213 and I-44 forms in response to a FOIA request by an ACLU affiliate seeking information on CBP roving patrols in Southern California. Ebadolahi Decl., Exh. Q. The I-213s did not redact location information from the "at/near" fields or from the narrative sections. *Id.* The I-44 forms likewise did not redact location information related to the border patrol station, border patrol office/station involved in the incident, place of apprehension or seizure, or location information contained in the narrative description. *Id.* Similarly, DHS produced several hundred I-213 forms in response to a FOIA seeking information about transportation raids in the Buffalo Sector. Morawetz Decl., Exh. P. DHS did not redact the "at/near", Border Patrol station, or narrative information

7

identifying the incident location. Some I-213s identified the exact building or the bus or train where the encounter occurred. *Id.* DHS also released over 400 I-213s in response to a FOIA by the ACLU of Northern California seeking records from Immigration and Customs Enforcement, another subsidiary DHS agency. Mass Decl., Exh. K. Those records likewise allowed the ACLU to determine how many non-citizens were arrested on particular days in particular counties. *Id.. See also* Aukerman Decl., Exh. R (in response to FOIA on executive order barring entry to nationals of certain majority Muslim countries, DHS released locations where travelers sought to enter the U.S.)

Third, other law enforcement agencies, both state and federal, regularly include geographic information when responding to public records requests. Moreover, such agencies frequently release hundreds or thousands of incident reports that include pinpoint location information. For example, the Chicago Police Department released information about approximately 256,000 *Terry* stops, including the exact address where the stop occurred. Sheley Decl., Exh. M. *See also* Mass Decl., Exh. K (describing FBI release of information about locations officers visited when conducting threat assessments); Cohn Decl., Exh. L (describing release of county, route, mile marker, street address, intersection, and geographic coordinates in documents released by the Texas Department of Public Safety); Aukerman Decl., Exh. R (describing hundreds of incident reports with location information released by Grand Rapids Police Department); Wessler Decl., Exh. N

8

(describing various law enforcement agencies' production of specific address information in responding to records requests about cell site simulators).

The information obtained in such FOIAs has shaped public debates about government accountability, led to needed reforms by law enforcement agencies, undergirded litigation challenging law enforcement abuses, and spurred passage of reform legislation. *See, e.g.* Sheley Decl., Exh. M; Morawetz Decl., Exh. P; Aukerman Decl., Exh. R. For example, a report written based on CBP documents showing that enforcement operations in New York were occurring far from the border generated widespread media coverage and affected government policy on transportation raids. Morawetz Decl., Exh. P. Similarly, location data in the Chicago FOIA showed that *Terry* stops were concentrated in certain communities of color, leading to a public outcry and a landmark agreement to implement policing reforms. Sheley Decl., Exh. M.

Here, Defendants' refusal to disclose geographic information prevents the public from learning whether CBP agents are in fact improperly treating the entire state as within the 100 Mile Zone, and whether reforms are needed.

## V.     Plaintiffs Have Proposed Two Reasonable Compromises That Allow The Disclosure Of General Geographic Information That Does Not Compromise Law Enforcement Activities.

Defendants contend that location information can be withheld under FOIA because disclosure would allow bad actors to piece together information about where Border Patrol operates, and then circumvent the law. Plaintiffs, although they believe that this notion is implausible (*see* Argument, I.C.), offered two com-

9

promise solutions to address this purported concern. First, Plaintiffs proposed limiting geographic marker information to the city/township level; Defendants could redact specific geographical markers that would pinpoint where apprehensions occurred, but Plaintiffs would obtain general location information sufficient to assess where in Michigan and how far from the border CBP is operating. 3/5/18 Aukerman Letter, Exh. H. Plaintiffs also asked for sample I-213 and I-44 forms with geographic information intact to allow the Court and Plaintiffs to determine which fields, if any, contain pinpoint location information and which denote only broad swaths of territory. *Id.* Plaintiffs suggested that the parties could then limit redactions to fields containing specific location information or, alternately, that latitude longitude coordinates be provided without any decimal points, revealing only a broad area rather than a specific location. *Id.*

Second, Plaintiffs proposed a representative sampling (every 5th) of the I-213s and I-44s with geographic markers intact (e.g. approximately 496 of the estimated 2,482 reports that Defendants identified for the 2012-2014 period). *Id.*; Govt Brief, ECF No. 28, Pg.ID #478. Because CBP has previously released hundreds of I-213s containing location information in *ACLU of San Diego v. United States,* 2017 WL 2889682 (C.D. Cal. Feb. 10, 2017), Plaintiffs suggested release of a comparable number in Michigan. *See* 3/5/18 Aukerman Letter, Exh. H; Ebadolahi Decl., Exh. Q. Defendants rejected both compromise proposals, and declined to provide sample I-213s and I-44s with unredacted location information,

although they did provide more information about some redacted fields (e.g. the "at/near" field lists city and state). *See* 3/16/18 Aukerman/Nestler Email Exchange, Exh. I.

## LEGAL STANDARD

The objective of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2012), and the guiding principal for judicial interpretation is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation omitted). "FOIA calls for full disclosure of the activities of federal agencies unless information is exempted under clearly delineated statutory language." *Jones v. F.B.I.*, 41 F.3d 238, 244 (6th Cir. 1994) (citations omitted.) Exemptions must be narrowly construed. *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989). Additionally, whenever a federal agency seeks to invoke one of these delineated exemptions, the agency bears the burden of demonstrating that requested information is subject to one of these limited exemptions. *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) ("That burden remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document.") (internal citations omitted).

"The agency's decision that the information is exempt from disclosure receives no deference." *Bloomberg, L.P. v. Board of Governors of the Fed. Reserve Sys.,* 601 F.3d 143, 147 (2d Cir. 2010) (*citing U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 755 (1989)); 5 U.S.C. §

552(a)(4)(B) (providing for *de novo* review of exemption claims). Accordingly, a court is required to conduct a *de novo* review of the record, deciding "whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure under the FOIA." *Assassination Archives and Research Ctr. v. Central Intelligence Agency,* 334 F.3d 55, 57 (D.C. Cir. 2003).

Even when an exemption applies, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b).

## ARGUMENT

"[D]isclosure, not secrecy, is the dominant objective of [FOIA]." *Rose*, 425 U.S. at 361. Whenever an agency seeks to withhold responsive information, "[t]he burden of proof is always on the agency to demonstrate that it has fully discharged its [FOIA] obligations." *McKinley v. FDIC,* 807 F. Supp. 2d 1, 4 (D.D.C. 2011).

Here, Defendants seek to shield all geographic information about the locations of CBP activity in Michigan from public view under FOIA exemption 7(E). Defendants have the burden of proving not only that exemption 7(E) applies, but also that none of the redacted information is segregable. They have failed to do so.

### I.    Defendants Have Not Met Their Burden of Proving that Geographic Markers Are Exempt Under 7(E)

#### A. The Requirements for an Exemption Under 7(E)

5 U.S.C. § 552(b) exempts from production

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information…

(E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

Plaintiffs do not dispute that Defendants have met Exemption (7)(E)'s threshold requirement of showing that the information sought is contained in law enforcement records. However, Defendants must then prove that:

1. Geographic information constitutes "techniques and procedures" or alternately constitutes "guidelines" used "for law enforcement investigations or prosecutions"; and

2. Disclosure could reasonably be expected to risk circumvention of the law;

*See Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 245 (D.D.C. 2013). Defendants have failed to prove either.

**B. The Geographic Markers Are Not "Techniques and Procedures"**

To invoke Exemption 7(E), the agency must first prove that the withheld locations are either "techniques and procedures" or "guidelines" used "for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E). Because Defendants do not appear to be arguing that locations are a "guideline", Plaintiffs focus on whether they are "techniques and procedures".[11] While FOIA contains no definition of that phrase, courts have held that "techniques and procedures" refers

_____

[11] Location information would not, in any event, meet the definition of "guidelines," which are records containing "an indication or outline of future policy or conduct." *Lowenstein*, 626 F.3d at 682.

13

"to how law enforcement official go about investigating a crime." *Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 682 (2d Cir. 2010). *See also Hamdan v. U.S. Dep't. of Justice,* 797 F.3d 759, 777-78 (9th Cir. 2015 (describing techniques in terms of methods of conducting investigation).

Where an agency fails to prove that information is a technique or procedure, Exemption 7(E) simply does not apply. For example, in *Families for Freedom v. U.S. Customs & Border Prot.*, 797 F. Supp. 2d 375, 391 (S.D.N.Y. 2011), the court found that location-related statistics showing the "total number of all arrests made by the Rochester Station for each year, and the total number of transportation raid arrests within the Buffalo Sector" were not "techniques and procedures," and therefore could not be exempt under 7(E). The court also held that CBP could not redact "charge codes" (indicating the legal reason for arrest) from I-213s because those codes would not disclose "techniques and procedures." *Id.* at 394. *See also, e.g. Living Rivers v. U.S. Bureau of Reclamation,* 272 F.Supp.2d 1313, 1321 (D. Utah 2003) (because maps are not techniques, procedures or guidelines, Exemption 7(E) did not apply); *ACLU v. Dept. of Homeland Security*, 973 F.Supp.2d 306, 318-19 (S.D.N.Y. 2013) (holding that factual information in immigrants' detention review files was not a technique or procedure covered by Exemption 7(E)).

There is no logical way to describe locations – e.g. a city name – as "techniques and procedures".[12] Defendants do not seriously attempt to do so.[13] Rather they argue that location information is used by the agency when "devising USBP law enforcement techniques and procedures." Lewandowski Decl., ECF 28-2, Pg. ID# 512. Thus, locations are allegedly subject to Exemption 7(E) because they show where CBP elects to practice its *actual* "techniques and procedures."

The exemption sought by the Government is overbroad and unnecessary to protect legitimate law enforcement activities. By this logic, a law enforcement agency could withhold any information that it considers in planning operations or any data used to measure agency effectiveness. The public could not even obtain information about how many officers an agency has or what its budget is since the agency might consider such information in making "decisions about resource allo-

---

[12] In order to shoehorn geographic information into Exemption 7E, Defendants argue that disclosing location information would reveal "data showing locations where CBP apprehensions and seizures occur" and "USBP's station-level statistics." Govt. Brf., ECF No. 28, Pg.ID# 489. But those two categories of information no more qualify as "techniques and procedures" than does the name of a city. *See Lowenstein*, 626 F.3d at 682; *Hamdan*, 797 F.3d at 777-78.

[13] The cases Defendants cite for the proposition that a location is a "technique or procedure" fail to advance their argument. Two cases concern deployment of surveillance technology, while here, of course, the issue is redaction of the location of arrests. *See Elec. Frontier Found. v. Dep't of Homeland Sec.*, No. 12-5580-PJH, 2014 WL 1320234, at *3 (N.D. Cal. Mar. 31, 2014) (releasing location of drones would show where agency has clearance to fly); *Lewis-Bey v. Dep't of Justice*, 595 F. Supp. 2d 120, 138 (D.D.C. 2009) (electronic surveillance techniques). The third, *Ohio State Univ. v. CBP*, No. 3:15-cv-0833, ECF 45, at *6 (N.D. Ohio June 1, 2016) concerns entry landmarks on CBP forms (which Plaintiffs do not seek here), as well as arrest landmarks. The court's concern there was with releasing information about "vulnerable areas along the border." Here, Plaintiffs' focus is on non-border geographic information.

15

cation and placement of technology and manpower," Lewandowski Decl., ECF 28-2, Pg.ID# 512, which in Defendants' view suffices to shield it from public view.

Defendants also argue that geographic information should fall under Exemption 7(E) because its disclosure would risk circumvention of the law. Gov't Brief, ECF 28, Pg.ID# 491-92. If that were true (and it is not), it does nothing to establish that locations are "techniques and procedures" in the first place. Moreover, the government's position is internally inconsistent: at the sector level the government publishes apprehension and staffing information, and does not claim that such location information is a technique or procedure. Lewandowski Decl., ECF 28-2, Pg.ID# 514. Yet the government claims that, when revealed at the station level, the exact same information constitutes "techniques and procedures."

In sum, because locations are not "techniques and procedures for law enforcement investigation or prosecutions", Exemption 7(E) simply does not apply and the Court need not reach the question whether disclosure could risk circumvention of the law. *See, e.g. Families for Freedom*, 797 F.Supp.2d at 391 (not reaching circumvention because, in the absence of "techniques and procedures", Exemption 7(E) did not apply); *Living Rivers*, 272 F.Supp.2d at 1321 (same).

### C. Defendants Fail to Establish That Disclosure Poses a Reasonable Risk of Circumvention of the Law.

Given the baseline presumption of openness under FOIA, withholding is only appropriate where "the right of the public to know" is outweighed by "the need of the Government to keep information in confidence." *John Doe Agency v. John Doe*

*Corp.*, 493 U.S. 146, 152 (1989). Thus, law enforcement records are "not exempt unless disclosure would or could reasonably be expected to cause the harm embodied in one or more of Exemption 7's six subsections." Hammit et al., *Litigation Under the Federal Open Government Laws*, at 224 (2010).

Exemption (7)(E) limits withholding to circumstances where disclosure "could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). As the government notes, courts are divided about whether that clause applies to "techniques and procedures" or only to "guidelines," and the Sixth Circuit has yet to decide the issue.[14] By focusing much of its briefing on the alleged risks of disclosure, the government implicitly recognizes that law enforcement information is exempt under 7(E) only if its disclosure would enhance the ability of bad actors to evade the law. The Government's proffered facts and arguments do not satisfy the required evidentiary showing.

Exemption 7(E) "only protects techniques and procedures not already well-known to the public." *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 551 (6th Cir. 2001)[15]. "It would not serve the purposes of FOIA to allow the government to

---

[14] *See*, *e.g.*, *Asian Law Caucus v. DHS*, 2008 WL 5047839, at *3 (N.D. Cal. Nov. 24, 2008) (collecting cases on both sides of issues); *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 249-50 (D.C. Cir. 1993) (under Exemption (7)(E), "the agency must establish that releasing the withheld materials would risk circumvention of the law"); *Davin v. Dept. of Justice*, 60 F.3d 1043, 1064 (3d Cir. 1995) (requiring government to show risk of circumvention of the law under the "techniques and procedures" prong).

[15] Defendants inaccurately cite *Jones*, 41 F.3d at 249, as authorizing a more expansive reading of exemption 7(E). What the Sixth Circuit actually did,

17

withhold information to keep secret an investigative technique that is routine and generally known." *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995). Congress did not intend 7(E) "to cover 'routine techniques and procedures already well-known to the public, such as ballistic tests, fingerprinting, and other scientific tests commonly known.'" *Ferri v. Bell*, 645 F.2d 1213, 1223–24 (3d Cir. 1981), *modified*, 671 F.2d 769 (3d Cir. 1982) (quoting Senate Conf. Report at 6291). Rather Exemption 7(E) applies to "obscure or secret techniques." *Jaffe v. CIA*, 573 F.Supp. 377, 387 (D.D.C. 1983).

The agency has the burden of proof in showing that the technique or procedure at issue is not generally known, and therefore its disclosure would risk circumvention of the law. *See Am. Immigration Council*, 30 F. Supp. 3d at 75-76; *Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38, 47 (D.D.C. 2012). Moreover, while "*any* information about past law enforcement practices could theoretically give would-be criminals help that they would not otherwise have," not just any information is sufficient to invoke this exemption. *Families for Freedom*, 837 F.Supp.2d at 300 (original emphasis). Instead, "Congress has made clear" that the government must establish "a *reasonable* increased risk of circumvention of the law." *Id*. (original emphasis). When it fails to do so, Exemption 7(E) does not apply. *See id.*; *Pub. Employees for Envtl. Responsibility v. EPA*, 978 F.Supp. 955, 962 (D. Colo. 1997)

---

however, was find the exemption proper where *in camera* review showed that the withheld information involved "lawful investigative techniques not generally known to the public which continue to be successfully used today." *Id.*

(concluding, based on *in camera* review, that the responsive material was "not likely to lead to a risk of circumvention of the law"")

Defendants have failed to prove that geographic information (assuming it is even a technique or procedure) poses a reasonable risk of circumvention of the law. It is no secret that every apprehension by Border Patrol occurs in some location. Nor is it a secret that CBP is active in Michigan.[16] Indeed immigrant communities are well aware of CBP's presence. Robinson Decl., Exh. O. Even the agency admits that location information about an individual arrest "means little" and does not enhance the ability of others to evade immigration laws. Lewandowski Decl., ECF 28-2, Pg.ID# 511. Defendants' only argument is that geographic information "would aid individuals who seek to cross the border illegally" based on a so-called "mosaic effect." ECF 28-2, Pg.ID #511-12. This is incorrect.

First, as detailed in the attached declarations, *see* Facts IV, law enforcement agencies routinely release hundreds or thousands of incident reports with location information intact. Defendants' hypothetical bad actors can learn much more about, say, where Chicago police officers operate – the publicly released data pinpoints the locations of thousands of stops – than those actors could learn about Border Patrol's operations from the more generalized location information that has been redacted here. The fact that both state and local law enforcement agencies

---

[16] *See e.g.* Niraj Warikoo, *Michigan Non-Criminal Immigrant Arrests, Deportations Soar Under Trump*, Detroit Free Press, Mar. 20, 2018 (discussing Border Patrol presence in Southwest Michigan).

regularly release location information, and indeed that CBP itself has done so in the past, is strong evidence that Defendants' claims of risk are not reasonable.

Second Michigan's border with Canada is almost entirely a water boundary, and it is no secret that CBP officers are stationed at the bridge and tunnel crossings connecting the two countries. Robinson Decl., Exh. O. Moreover, it unclear how potential border-crossers would be aided by knowing the general locations where CBP makes arrests far from the border, which is precisely the information at issue.

Third, potential law breakers will only find information about the location of Border Patrol activities useful – if at all – if that information is current. Here any location information released would be months or years old; some dates back to 2012. It is implausible that undocumented immigrants, who often have real-time information via social media about the location of immigration agents, will ever pore through old reports to figure out the areas were agents were years ago. *Id.*

Fourth, Defendants regularly publish statistics broken down by location at the sector level – apparently conceding that disclosure of such information is not a problem – but argue that disclosing exactly the same information at the station level would result in grave harm but provide no justification for this distinction. Given that there are five stations in the Detroit sector (four in Michigan and one in Ohio), each must cover tens of thousands of square miles. Defendants do not explain why, if it is safe for the public to know the relative apprehension rates at

the sector level, it is dangerous for the public to know the relative apprehension rates at the station level, given the amounts of territory a single station covers.[17]

Finally, to the extent Defendants justify withholding location information based on concerns about interior enforcement[18] – even though Border Patrol's mission and the extraordinary powers it has are supposed to be linked to patrolling the border – that implicates the principle that Exemption 7(E) does not apply where an agency is seeking to conceal information about law enforcement techniques that are "illegal or of questionable legality." *Wilkinson v. FBI*, 633 F.Supp. 336, 349 (C.D. Cal. 1986). *See also Jones*, 41 F.3d at 246. FOIA exemptions presume that the agency is acting within its authority. Here Plaintiffs seek to determine whether CBP is acting without warrants far from the border in violation of the Fourth Amendment. *See* 8 U.S.C. §1357(a)(3) (authorizing agents to act without warrants only "for the purpose of patrolling the border to prevent the illegal entry of aliens"). That is exactly the information Defendants have refused to provide.

Defendants' "mosaic theory" could conceivably support withholding virtually all CBP records, undermining the core goals of FOIA. If information

---

[17] Defendants incorrectly suggest that *Families for Freedom* allowed withholding of station-level information, when in fact the court there actually ordered production of station-level apprehension information because it did not qualify as redactable "techniques and procedures." 797 F.Supp.2d at 391. While the court did allow redaction of certain comparative station-level information, *id.*, location information was included in the records produced. Morawetz Decl., Exh. P.

[18] The records produced show that only about 5 percent of known foreign citizens processed by CBP in the Detroit Sector are recent border crossers who arrived in the U.S. during the preceding 30 days. ECF 22, Pg. ID# 284.

could be withheld merely because it would contribute to a more complete picture of the agency's knowledge or activities, CBP would have carved out for itself the very categorical exemption from the FOIA that Congress has repeatedly rejected. *See Shapiro v. United States Dep't of Justice*, 239 F. Supp. 3d 100, 115 (D.D.C. 2017) (discussing limits to the scope of the mosaic theory under Exemption 7(E)). *See also Detroit Free Press v. Ashcroft*, 303 F.3d 681, 709 (6th Cir. 2002) (concluding "speculation should [not] form the basis for … a drastic restriction" on the right to access immigration hearings, and warning against the harmful impact on fundamental values of secrecy that is justified by limitless mosaic arguments.)

## II.    Defendants Have Failed to Prove that there is No Segregable Location Information That Can Be Disclosed

Even assuming locations are "techniques and procedures" whose disclosure would risk circumvention of the law, Defendants must also prove there is no "reasonably segregable portion" of the geographic information that could be disclosed. 5 U.S.C. § 552(b)(7); *Donovan v. FBI,* 806 F.2d 55, 58 (2d Cir.1986); *see also Gatore v. United States Dep't of Homeland Sec.*, 177 F. Supp. 3d 46, 51 (D.D.C. 2016) (requiring disclosure of all non-exempt information unless the document itself is "inextricably intertwined" with exempt portions). The agency has the burden of demonstrating that "all reasonably segregable, nonexempt information has been released." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 186 (3d Cir. 2007) (citing 5 U.S.C. § 552(b)).

Here, when Plaintiffs offered a compromise solution (e.g. release of city/township information) that would have addressed any possible claim that disclosure would risk circumvention of the law, Defendants rebuffed it. *See* 3/5/18 Aukerman Letter, Exh. H; 3/16/18 Aukerman/Nestler Email Exchange, Exh. I. The level of specificity of a geographic marker is relevant to determining if it could theoretically be used to compromise a legitimate law enforcement purpose. Different redacted fields contain different forms of location information at various levels of specificity, all of which is relevant to determining whether disclosure risks circumvention of the law. *Cf. Carpenter v. United States*, 2017 WL 5890155 (U.S. Oral. Arg., 2017), 13-15, 27-30, 71-71 (colloquies between counsel and various Justices concerning the constitutional implications of the increasing specificity of cell site location information). Even if noncitizens could use information that CBP officers made 20 arrests at a specific intersection to evade detection, it is implausible that noncitizens could take evasive action simply based on information that CBP officers made 20 arrests in a particular city or township. Defendants' refusal to provide even a sample I-213 and I-44 with unredacted location information complicates this Court's and Plaintiffs' ability to know the level of specificity of the blacked-out geographic information.[19] *See* 3/16/18

---

[19] Because Defendants have not provided sample I-213s and I-44s showing location information, they have failed to meet their burden of providing sufficient information about redacted fields to "enable[] the court to make a reasoned, independent assessment of the claim[s] of exemption." *Jones,* 41 F.3d at 242. *See also Rugiero*, 257 F.3d at 544 (requiring government to "fairly describe[] the

23

Aukerman/Nestler Email Exchange, Exh. I. Nevertheless, it is clear that much of the location information at issue is very general. For example, the I-213 "at/near" field reveals the city and state where the encounter occurred. *See id*.; Sample I-213 attached to Morawetz Decl., Exh. P. Even fields where the location information is more precise, such as the longitude/latitude field, can be partially redacted to provide only a general location.[20] Defendants made no effort to segregate general location information.

Moreover, even if one accepts Defendants' claim that releasing information about locations near the border would undermine enforcement, Defendants cannot explain how releasing information about arrests far from the border would do so.

## CONCLUSION

Plaintiff respectfully requests that the Court deny Defendants' motion for summary judgment, grant Plaintiff's cross-motion for partial summary judgment and order production of the disputed geographic information.

---

content of the material withheld"). The Lewandowski declaration provides only abbreviated descriptions of the redacted fields, without discussing the substantial variation in the information they contain, which includes everything from longitude and latitude coordinates to location information at the city/state level. ECF No. 28-2, Pg ID # 510. Defendants' failure to provide information about the level of generality/specificity of the redacted location information means they have not met their burden to prove that Exemption 7(E) applies and all segregable information has been released.

[20] *See* Zhang, *How precise is one degree of longitude or latitude?*, Gizmodo, Sept. 05, 2014, https://gizmodo.com/how-precise-is-one-degree-of-longitude-or-latitude-1631241162 (where coordinates are given to the units degree, the information identifies a location to within approximately 111 kilometers).

Respectfully submitted,

By: /s/ Miriam J. Aukerman                     /s/ Samuel C. Damren
    Miriam J. Aukerman (P63165)        Samuel C. Damren (P25522)
    Juan Caballero (NY Reg. 5517396)   Corey Q. Wheaton (P80202)
    Kary Moss (P49759)                 Dykema Gossett PLLP
    Michael J. Steinberg (P43085)
    American Civil Liberties Union
    Fund of Michigan

                    Dated: March 28, 2018

## **CERTIFICATE OF SERVICE**

Corey Q. Wheaton deposes and states that on March 28, 2018, my assistant electronically filed the foregoing with the Clerk of the Court using the electronic filing system.

/s/ Corey Q. Wheaton
Samuel C. Damren (P25522)
Corey Q. Wheaton (P80202)
Dykema Gossett PLLP
400 Renaissance Center
Detroit, MI 48243
(313) 568-6519
cwheaton@dykema.com