UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHIGAN IMMIGRANT RIGHTS CENTER, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) Civil Action No. 5:16-cv-14192<br>) |
| v. | ) HON. John Corbett O'Meara<br>) Mag. Judge Elizabeth A. Stafford |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |
| _____) | |

**OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## Introduction

Plaintiffs have filed a cross-motion for partial summary judgment and opposition to Defendants' cross-motion for partial summary judgment, ("Pls.' Mot."), ECF No. 32. They contend that Defendants have improperly withheld geographic information in response to Plaintiffs' FOIA request because: (1) such pieces of information are purportedly not "techniques and procedures" under Exemption 7(E); (2) Defendants have purportedly failed to establish a reasonable risk of circumvention of the law; and (3) Defendants have allegedly failed to prove that there is no reasonably segregable portion of the geographic information

1

that could be disclosed. *See generally* Pls.' Mot. They also point to what they unilaterally deem to be "reasonable compromise[]" offers, which Defendants have purportedly "rebuffed," as evidence that Defendants are unreasonably withholding information. *Id.* at 9–11, 23. In fact, these so-called compromise offers, which came after Defendants had already filed for partial summary judgment, were simply offers for Defendants to reveal some of the very information at issue in this suit: city/township level geographic information and a "statistically representative portion" of unredacted records. *See* Pls.' Mot., Ex. H, ECF No. 32-9. These offers would present the same harms as releasing the entire dataset. Revealing this information would present a serious threat to law enforcement by CBP and USBP, and has been properly protected under Freedom of Information Act ("FOIA") Exemption 7(E).

Because the production of the geographic information at issue would disclose law enforcement techniques and procedures, Exemption 7(E) applies. Moreover, although the law of this circuit does not require reasonable circumvention of the law, Defendants nonetheless have done so. Lastly, there is no reasonably segregable portion of the information that could be released.

## ARGUMENT

I. **Producing the Geographic Information Plaintiffs Seek Would Disclose Law Enforcement Techniques and Procedures, So Exemption 7(E) Applies.**

Plaintiffs direct much of their argument at a straw man—they appear to miss the plain meaning and purpose of FOIA Exemption 7(E). *See* 5 U.S.C. § 552(b)(7)(E). Plaintiffs assert that the information Defendants withhold cannot fit under Exemption 7(E) because geographic markers themselves cannot possibly be techniques and procedures. *See* Pls.' Mot. at 13–16.

But this argument misconstrues the FOIA statute and the facts here. Exemption 7 protects from disclosure law enforcement records or information where "the production of such law enforcement records or information . . . would disclose" law enforcement techniques and procedures, or would disclose law enforcement guidelines if such disclosure could reasonably be expected to risk circumvention of the law. § 552(b)(7)(E). The statute does not simply protect techniques, procedures, and guidelines themselves from disclosure, but allows for withholding where releasing records and information would have the substantive effect of disclosing those techniques, procedures, and guidelines. *See e.g.*, *Elec. Frontier Found. v. Dep't of Homeland Sec.*, No. 12-5580-PJH, 2014 WL 1320234, at *4 (N.D. Cal. Mar. 31, 2014) (noting that the locations of CBP drone operations do qualify as "techniques and procedures" because FOIA "merely requires that

3

release would disclose law enforcement techniques and procedures, or that it would disclose law enforcement guidelines and would risk circumvention of the law").

For this reason, Plaintiffs' argument that geographic information cannot be techniques and procedures is both incorrect and misdirected. Yes, a single location is not a technique or a procedure, and neither is a pixel a portrait, but the disclosure of thousands of pixels would surely have the effect of disclosing the image itself. As stated in the Robert Lewandowski Declaration, "the fact that one person was apprehended or arrested at a particular location means little," but nonetheless, aggregated location information would "reveal[] the locations of [CBP's] primary enforcement zones." Defs.' Mot. for Partial Summ. J. Ex. A, Lewandowski Decl. ¶ 12, ECF. No 28-2, ECF. No 28-2. Surely, Plaintiffs could not meaningfully contest that primary enforcement zones constitute techniques and procedures. It is for this reason that such data is properly protected by 7(E).

Plaintiffs protest that this "mosaic" theory "could conceivably support withholding virtually all CBP records," and that information should not be withheld "merely because it would contribute to a more complete picture of the agency's knowledge or activities[.]" *See* Pls.' Mot. at 21–22. But Defendants' invocation of the mosaic theory here is not a vague metaphor, it is quite literal: disclosing the geographic information Plaintiffs seek would allow persons to aggregate those locations to see where CBP concentrates its enforcement. *See* Lewandowski Decl.

4

¶ 13–14, 18. Plaintiffs contend that Defendants "provide no justification for [the] distinction" between releasing geographic information at the station level and at the sector level, but the reasoning behind Defendants' withholding, and why the mosaic theory is appropriate here, is amply described in the Lewandowski Declaration and in Defendant's opening brief. Pls.' Mot. at 20; Lewandowski Decl. ¶ 12-13. Thus Defendants' position is not nearly as broad or nebulous as Plaintiffs claim. Defendants are only withholding those categories of information necessary to protect law enforcement records protectable under the statute. *See* 5 U.S.C. § 552(b)(7)(E).

## II. Defendants Have, In Fact, Established that Disclosure Poses a Reasonable Risk of Circumvention of the Law.

It is an unsettled question in this Circuit whether Defendants are, in fact, required to show a reasonable risk of circumvention of the law to protect techniques and procedures from disclosure. This Court has held that no such showing of harm is required. *See ACLU of Michigan v. FBI*, 2012 WL 4513626, at *9 (E.D. Mich. Sept. 30, 2012). The plain language of the statute suggests that Defendants are *not* required to show reasonable risk of circumvention of the law for techniques and procedures, only guidelines. *See Lowenstein v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010) (explaining that reasonable risk of circumvention only applies to "guidelines" and not "techniques and procedures" because "because the two alternative clauses that make up Exemption 7(E) are separated by a comma").

5

But regardless, Defendants have unequivocally established that this disclosure would, in fact, create a reasonable risk of circumvention of the law.

Plaintiffs dispute this conclusion, because they contend that: (1) the techniques and procedures being withheld are already known to the public; (2) the information plaintiffs seek is regularly released by law enforcement; (3) the information is too old to be useful to circumvent the law anyway; (4) there is no difference between releasing station-level geographic data and sector-level geographic data; and (5) any geographic information being withheld is likely to conceal information about illegal activities of CBP, and therefore should be released. *See* Pls.' Mot. at 16–22.

For the reasons described below, Plaintiffs' arguments that there is no reasonable risk of circumvention of the law are not credible. Courts "accord substantial weight to an agency's declarations regarding the application of a FOIA exemption." *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012). Because the law enforcement agency itself is best situated to determine where there is such reasonable risk, "an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012); *see also ACLU of Michigan,* 2012 WL 4513626, at \*5; *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir. 2001). Particularly when it comes to the kinds of information that would aid lawbreakers, USBP is best

positioned to know the kinds of information that would reasonably risk circumvention of the law, and it has explained its reasoning in the Lewandowski Declaration. *See generally* Lewandowski Decl.

> a. The Information Being Withheld is not "Already Well-Known to the Public."

Plaintiffs assert that the information the Defendants are protecting from disclosure is the kind of "routine" technique and procedure already known to the public—they argue that because the information they seek is purportedly not "obscure or secret," there could not be a reasonable increased risk of circumvention of the law. *See* Pls.' Mot. at 16–22. To support this conclusion, they proffer that "[i]t is no secret that every apprehension by Border Patrol occurs in some location," that it is similarly well-known "that CBP is active in Michigan," and that the Lewandowski Declaration admits that location information about an individual arrest "means little." *Id.* at 19. Plaintiffs further argue that "it is no secret that CBP officers are stationed at the bridge and tunnel crossings connecting the two countries." *Id.* at 20.

Plaintiffs appear to either misunderstand or simply disregard the import of the mosaic theory here, electing to dismiss the concept entirely rather than dispute its merits. *See id.* But the information Plaintiffs seek would reveal techniques and procedures not generally known to the public because CBP's primary enforcement zones are not publicly known. CBP has determined the information at issue here

7

should be protected from disclosure precisely because the information would reveal techniques and procedures in the *aggregate*, not at the individual level. *See* Lewandowski Decl. ¶ 12–19. Thus Plaintiff's argument that CBP's presence in Michigan locations is generally known misses the point—the clear inferences that could be drawn from the disclosure of thousands of geographic locations and similar station-level data are not public.

Furthermore, that CBP is stationed at ports of entry is also immaterial. USBP's statutory duties and responsibilities require patrolling the border between and beyond simply points of entry, and Plaintiffs seek such information. *See* Lewandowski Decl. ¶¶ 1, 2 (describing CBP officers patrol ports of entry while CBP's USBP agents prevent illegal entry into the U.S. of people and contraband between the ports of entry). Thus, as noted above, the information Plaintiffs seek is not "generally known."

b. USBP Does Not Regularly Provide the Information Plaintiffs Seek.

Plaintiffs also claim that there is no risk of circumvention of the law because law enforcement agencies "regularly" provide the information Plaintiffs seek. *See* Pls.' Mot. at 7–9, 19–20. What has been released in other limited releases by CBP or in disclosures by other agencies for other purposes does not in any way affect the effect of release on law enforcement in this case. Nonetheless, it is not the regular practice of USBP to release this information. *See* Supplemental Declaration of

8

Robert Lewandowski, ("Supp. Decl."), ¶ 3, attached as Ex. 1.

Defendants cannot speak to the accuracy of the Plaintiffs' descriptions of the actions of other city, state, and federal law enforcement agencies. *See* Supp. Decl. ¶ 3. Regardless, the examples Plaintiffs point to are readily distinguishable; those examples involved far fewer responsive documents, were in response to more tailored requests for information, or did not involve FOIA at all. *See* Pls.' Mot. at 7–9.

Plaintiffs primarily point to three examples from DHS, two involving CBP and one involving Immigration and Customs Enforcement ("ICE"). *See Id.* at 7–8. In each, the agency released samples of I-213 forms and/or I-44 forms that contained unredacted "at/near" fields and some narrative information containing city-level data. But none of these examples is analogous to the request here. In the Southern California case, Plaintiffs only requested information relating to "roving patrols," while here they request records for all USBP activities. *See* Pls.' Mot. at 7. In addition, CBP only released several hundred I-213s out of hundreds of thousands of apprehensions in response to that request. These two factors meant that "there was no way to extrapolate station-level statistics" from the data in those I-213s, as there is here. *See* Lewandowski Decl. ¶ 20. The Buffalo example Plaintiffs point to was similarly narrow in scope, and not analogous to this case. *See* Pls.' Mot. Ex. P, Decl. of Nancy Morawetz, ECF No. 32-17. Plaintiffs in that

9

case only sought information relating to transportation raids, not the entire universe of USBP operations.  Also, the agency in that case only produced a small sample of forms, not the many thousands Plaintiffs seek here. *See* Supp. Decl. at ¶ 6.  Finally, the Northern California example that Plaintiffs cite does not involve USBP, but rather ICE, a different Department of Homeland Security ("DHS") component, and even then, that request only pertained to one particular ICE operation, the "Operation Return to Sender" program.  *See* Pls.' Mot. Ex. K ¶ 4; Supp. Decl. ¶ 8. None of these examples derogate from the fact that disclosure in the instant case would risk circumvention of the law, or the applicability of the exemption to the geographic information at issue here.

Plaintiffs' other examples are similarly irrelevant. The other examples are either requests that do not involve USBP, requests from individual FOIA requesters, or disclosures that do not involve FOIA or federal agencies at all.  *See* Pls.' Mot. Exs. J, K, L, M, N.  Plaintiffs point to the City of Chicago's purported practice of releasing *Terry* stop data; other local police station disclosures; "citation" information requested through the Texas Public Information Act, and declarations from lawyers who have sought I-213 forms for individual immigrant clients.  *See* Pls. Mot. at Facts IV.  Each of these examples is simply not relevant to the request here, *see* Supp. Decl. ¶ 8,  and they also change nothing about the fact that the geographic information Plaintiffs contest here would risk circumvention of the law

if disclosed.

### c. The Information Plaintiffs Seek is Not Too Old to Risk Circumvention of the Law if Disclosed.

Plaintiffs further argue that "potential law breakers will only find information about the location of Border Patrol activities useful—if at all—if that information is current." Pls.' Mot. at 20. Because the information being released is "months or years old," say Plaintiffs, unlawfully present aliens, "who often have real-time information" from social media, would never "pore through old reports to figure out the areas were [sic] agents were years ago." *Id.*

Plaintiffs appear again to misunderstand both the facts and the legal standard here. Even if Plaintiffs were correct that no alien looking to evade deportation would ever "pore through" these "old reports"—itself bold speculation—this information would also become available to smugglers, terrorists, and others who would seek to avoid detection and capture by USBP. *See* Lewandowski Decl. ¶ 14. The information Plaintiffs seek is also used on an ongoing basis as a means of "measuring operational effectiveness and devising USBP law enforcement techniques and procedures" for the future. *See id.* ¶ 13. Plaintiffs' argument that location information is useless if not real-time is simply incorrect.

Moreover, the standard for this Court's determination of the potential for misuse by bad actors—if this requirement applies at all—is simply one of reasonableness. *See ACLU of Michigan*, 2012 WL 4513626, at *5 (Court will

11

uphold the government position where agency declaration "fairly describes the content of the material withheld, adequately states its ground for nondisclosure, and those grounds are reasonable and consistent with the applicable law"). Defendants have spelled out the eminently reasonable rationale for protecting this information from disclosure. *See* Lewandowski Decl. Part III. That the geographic information at issue here is not real-time location information does not detract from the reasonable nature of Defendants' explanation for these redactions.

> d. Defendants have Provided Ample Justification for the Withholding of Station-Level Data but not Sector-Level Data.

Plaintiffs contend that Defendants have not provided sufficient justification for why station level data is protected but sector level data is not. *See* Pls'. Mot. at 20–21 (stating that Defendants "provide no justification for [the] distinction" between station level and sector level data). Although the Lewandowski Declaration contains detailed grounds for withholding, the rationale for the distinction is also self-evident: stations cover significantly less area than sectors do. *See* Lewandowski Decl. at 15–19. Nonetheless, Plaintiffs persist at questioning this rationale by suggesting that stations "must cover tens of thousands of square miles." Pls.' Mot. at 20.

Plaintiffs' argument, however, divorces the geographic information from the other information that may be gleaned by connecting the geographic information withheld with other unredacted information. Disclosure would not only allow

12

persons to see the sheer *number* of apprehensions at particular stations, but also the relative capabilities of each station, the kinds of apprehensions that occur at each station, seasonal changes in apprehension rates for each station, and many other trends.  Lewandowski Decl. ¶ 18.  This information cannot be gleaned from apprehension levels released at the Sector level.  Though Plaintiffs may disregard this distinction, these station-level statistics would be valuable to those looking to circumvent USBP's operations.  *See id*.

The Southern District of New York in the *Families for Freedom* case highlighted this exact distinction. 797 F. Supp. 2d 375 (S.D.N.Y. 2011).  Plaintiffs contend that Defendants' reading of *Families for Freedom* is overbroad, but it is not.  Plaintiffs note that in that case the Court "actually ordered [the] production of station-level apprehension information," a statement which is technically true, but which leaves out critical context.  *See* Pls. Mot. at 21 n.17.  In fact, the *Families for Freedom* Court did order the production of one particular "station-level" statistic when it ordered the release of the total number of all arrests made by the Rochester Station for each requested year.  *See Families for Freedom*, 797 F. Supp. 2d at 391.  However, it ordered the release of such information precisely *because* of the fact that the information requested was tailored narrowly enough that it would not risk harming enforcement efforts.  The court wrote:

> "Plaintiffs are not requesting arrest statistics for *each station* within the Buffalo sector, which could theoretically aid circumvention of the

law by publicizing the relative activity or success of Border Patrol agents in effecting apprehensions at each station, as defendants fear. Rather plaintiffs seek information only about the Buffalo Sector as a whole and Rochester Station in particular. This information will aid plaintiffs in calculating [] percentages . . . but it will not reveal the comparative strengths and weaknesses of the various stations within the Buffalo Sector. To the extent that the Daily Reports include arrest data broken down by station, defendants may redact the information so that only the Rochester Station arrest data and Buffalo Sector arrest totals are disclosed." *Id*.

This case presents a very different scenario. Rather than simply asking this court to disclose the total number of arrests in one particular station, plaintiffs request that *all* geographic information be released from the I-213s and I-44s, which would reveal the relative strengths and weaknesses of the five USBP stations within the Detroit Sector. The *Families for Freedom* court was careful to protect against exactly this kind of broad disclosure, and this Court should do so as well.

> e. <u>The Reason for Plaintiffs' Request is not Material to this Suit or to Reasonable Risk of Circumvention of the Law.</u>

Plaintiffs admit that "FOIA exemptions presume that the agency is acting within its authority." Pls' Mot. at 21. But they nonetheless intersperse their FOIA argument with references to their intention to use the requested information to uncover unconstitutional government practices. *See, e.g.*, *id*. They thus appear to intimate that this Court should presume, as Plaintiffs do, that Defendants must be strategically using FOIA exemptions to cover up unlawful government action.

This Court already struck allegations regarding the 100-mile zone from

14

Plaintiffs' Complaint as irrelevant. *See id.*; Order denying Pls.' Mot. to Deem Allegations Admitted, ECF. No. 19, (June 8, 2017). Allegations about the purported unlawfulness of CBP enforcement practices are not properly presented on a cross-motion for summary judgment in a FOIA case. As this Court already recognized in the Order Denying Plaintiffs' Motion to Deem Allegations Admitted, "[t]he purpose behind Plaintiffs' FOIA request is irrelevant" to Plaintiffs' request for documents. *See* ECF No. 19. If Plaintiffs believe they can plausibly present a challenge to the government's practices consistent with their professional obligations, they may do so in a separate civil action.

Furthermore, the cases they cite to support their request for some kind of heightened scrutiny are readily distinguishable. *Wilkinson*, an out-of-circuit case Plaintiffs cite to support the proposition that 7(E) does not apply where techniques are "illegal or of questionable legality," *see* Pls.' Mot. at 21, was a case in which plaintiffs had actually alleged violations of the First Amendment. *See Wilkinson v. FBI*, 633 F. Supp. 336, 349 (C.D. Cal. 1986) ("*[I]n view of plaintiffs' allegations that the agency used illegal techniques in their investigation and disrupted plaintiffs' exercise of their First Amendment rights*, the Court will carefully examine any deletions under 7(E).") (emphasis added). No such claims are present here.

In addition, the *Jones* case similarly recognized that FOIA is not the vehicle to bring substantive challenges to agency policy. *See Jones v. FBI*, 41 F.3d 238,

246 (6th Cir. 1994) (noting that FOIA operates "within specified limits," and is not a "primary vehicle" for prosecuting purported agency misbehavior).  Plaintiffs assert that Defendants' reading of the *Jones* case is "inaccurate[]," and that the case simply stands for the proposition that 7(E) is properly applied where *in camera* review already showed that withheld information involved "lawful investigative techniques" that are not generally known.  *See* Pls.' Mot. at 17–18  n.15.  But in *Jones*, the court found *in camera* review appropriate because there were plausible allegations of bad faith.  *See Jones*, 41 F.3d at 242–44.  Here, Plaintiffs have not alleged bad faith or attempted to challenge the sufficiency of the *Vaughn* index, they simply challenge Exemption 7(E)'s applicability at all with vague intimations of government misconduct.  *Jones* does not suggest any change in the standard of review in a FOIA case where Plaintiffs have decided to place their argument in such a framework, without an allegation of bad faith.

The purpose of their request does not change whatsoever the applicability of Exemption 7(E) to the information Defendants have protected from disclosure.

### III. The Information Plaintiffs Seek is Not, In Fact, Reasonably Segregable.

Plaintiffs lastly argue that Defendants have not proven there is no "reasonably segregable portion" of the geographic information that could be disclosed.  *See* Pls.' Mot. at 22.  Although the law they cite for support is not binding, there clearly is not a reasonably segregable portion of the information that

16

could be released. *See* Supp. Decl. at ¶ 10. Moreover, the so-called "compromise offers" Plaintiffs contend that Defendants "rebuffed" were simply not reasonable offers, and were rightly declined.

The issues in these partial summary judgement motions have already been narrowed by the parties. *See* Pls.' Mot. Exs. F, H. Wherever there was a reasonably segregable portion of information that could be released to Plaintiffs, Defendants have already done so. *See* Email from Emily Nestler, Trial Attorney, Federal Programs Branch, U.S. DOJ, to Miriam Aukerman, Senior Staff Attorney, ACLU of Michigan, Pls.' Mot. Ex. I at 2, (March 16, 2018, 11:52 a.m.) (noting that latitude and longitude coordinates are given to the fourth decimal point, agreeing to unredact the sector name, and noting that the other geographic information plaintiffs seek to redact is as or more specific than station-level statistics, and therefore could not be released). Plaintiffs admit as much, albeit in passing. *See* Pls.' Mot. at 11 (stating that Defendants "provide[d] more information about some redacted fields.").

The so-called compromise proposals that Plaintiffs offered to Defendants during the middle of summary judgment briefing were essentially proposals for Defendants to concede their case. Plaintiffs first proposed that Defendants release city/township level geographic information, which, if released, would provide information even more specific than station-level statistics. Although Plaintiffs may disagree with Defendants' legal position on the exemption's applicability to

17

such information, they cannot realistically contend that this offer constituted anything more than an offer for Defendants to fold.

Similarly, their second proposal to release a "random, statistically representative sample" of the geographic data presented the same problem. It is precisely because of the dangers associated with compiling statistically representative information that Defendants are withholding such information. A slightly smaller, but still statistically representative and randomized sample, would present the same dangers as releasing the entire dataset. *See* Boston University, Explanation of The Central Limit Theorem, http://sphweb.bumc.bu.edu/otlt/MPH-Modules/BS/BS704_Probability/BS704_Probability12.html, (with sufficiently large sample size, usually n $\geq$ 30, a randomized sample of data approximates the distribution of the underlying dataset for normally distributed, skewed, and binomially distributed data).

The offers Plaintiffs made were not reasonable ones, and the data is not reasonably segregable. *See* Supp. Decl. ¶ 10.

## **CONCLUSION**

For the foregoing reasons, and for the reasons stated in their opening brief, Defendants' Partial Motion for Summary Judgement, ECF. No 28, should be granted, and Plaintiffs' Partial Motion for Summary Judgement Should Be Denied.

Dated: May 9, 2018                      Respectfully Submitted,

CHAD A. READLER
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

/s/ Christopher R. Healy
CHRISTOPHER R. HEALY (DC Bar No. 219460)
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20001
Tel: (202) 514-8095
Fax: (202) 616-8470
Christopher.Healy@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2018 I filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to all attorneys of record.

/s/ Christopher R. Healy
CHRISTOPHER R. HEALY (DC Bar No. 219460)
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20001
Tel: (202) 514-8095
Fax: (202) 616-8470
Christopher.Healy@usdoj.gov

*Counsel for Defendants*

20