UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHIGAN IMMIGRANT RIGHTS CENTER, *et al.*, | ) ) ) |
| Plaintiffs, | ) Civil Action No. 5:16-cv-14192 ) |
| v. | ) ) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | ) DECLARATION OF ) PATRICK A. HOWARD ) ) ) |
| Defendants. | ) HON. Mark Goldsmith ) United States District Court Judge ) |

I, Patrick A. Howard, declare the following to be true and correct:

1. I am a Branch Chief within the Freedom of Information Act Division (FOIA Division) at U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I have been a Branch Chief in the FOIA Division since February 8, 2015. In this capacity, I oversee a staff of Government Information Specialists, the processing of requests for records submitted to CBP pursuant to FOIA, 5 U.S.C. § 552, the Privacy Act (PA), 5 U.S.C. § 552a, and other activities conducted pursuant to applicable records access provisions.

2. I am familiar with CBP's procedures for responding to FOIA requests. I provide technical and administrative supervision and direction to a group of FOIA specialists in processing FOIA requests and assist with FOIA/PA litigation matters, and I am personally familiar with the processing of FOIA/PA responses, including, at times, by directly reviewing for adequacy and compliance to federal laws and regulations. I am familiar with the May 21, 2015, and May 10, 2017, FOIA requests submitted by various affiliates of the Michigan Immigrant Rights Center

(MIRC) to CBP.

3. The statements I make in this declaration are based upon my personal knowledge, which includes knowledge acquired through information furnished to me in the course of my official duties and agency files that I personally reviewed in the course of my official duties.

4. I incorporate by reference the declaration I submitted in this case on September 28, 2018 (ECF No. 46-2).

5. I submit this second declaration in response to the Court's October 17, 2018, order for additional information regarding production.

6. Over the course of processing, between one and nine individuals have worked on addressing Plaintiffs' requests. These individuals have included employees and contractors for the FOIA Division, employees of U.S. Border Patrol, and employees of CBP's Office of Chief Counsel. It is difficult to estimate the exact number of hours per week each individual devoted to Plaintiffs' requests, as the time requirements have varied over time. The Agency must continue to adjust the deployment of its FOIA response resources to meet competing deadlines. The amount of time spent on Plaintiffs' requests increases as production deadlines approach—at busiest, Plaintiffs' FOIA request has required three full time division contractors, and 6 other employees who worked part time on Plaintiffs' request.

7. Although the agency attempts to process FOIA requests on a first-in, first out basis, production deadlines disrupt this process. Federal district courts overseeing FOIA request litigation, such as the instant case, have imposed a number of production deadlines on the Agency that require the Agency to process more recently filed requests ahead of earlier filed requests. For example, there is currently litigation over the processing of FOIA requests relating to several of the 2017 Executive Orders (EO), a number of which have been filed by ACLU affiliates, including

the ACLU of Michigan. Since January 2017, the Agency has received over 100 FOIA requests related to these EOs. To my knowledge, more than 90 of those requests are still open and being processed. There are 22 cases involving some of these requests in litigation in district courts across the country. Due to their significance in ongoing litigation, many of these requests must take priority over older-filed requests.

8. ACLU affiliates submitted 19 of the FOIA requests regarding one of these executive orders, EO 13,769. Currently, there are 17 separate federal cases in active litigation based on these requests. Twelve court orders have emanated from these cases, most of which, while still requiring a much faster production rate than the agency's average, have not required plaintiffs to produce documents at the 3,728 page-per-month rate requested by plaintiffs, particularly not over an extended period of time. In the Eastern District of Michigan before Judge Levy, case number 5:17-cv-11149, CBP was ordered on October 26, 2017 to process all specified documents within 5 months, at a rate of 820 pages per month, and release the first 820 pages by November 27, 2017. In the District of Oregon, case number 3:17-cv-00575, CBP was ordered on November 13, 2017 to process 5,200 pages of documents in controversy on or before May 31, 2018, or about 866 pages per month. In the Southern District of California, case number 3:17-cv-00733, CBP was ordered on November 6, 2017 to process 1,000 pages of documents by December 6, 2017, 1,000 more pages each month thereafter, and all documents (approximately 4,300 pages total) by April 6, 2018. In the Western District of Washington, case number 2:17-cv-00562, CBP was ordered on October 17, 2017 to process 1,000 pages within 30 days, 1,000 more pages within 60 days, and all remaining documents (approximately 4,100 pages) from specified document custodians within 90 days.

9. In addition to the EO FOIA requests, the Agency has received 94 requests related

3

to President Trump's plan to build a Border Wall. Thirty-five of those requests are in progress, 19 have documents that have been released or are awaiting redactions, and 40 requests are closed. Of the requests in progress, five are currently in litigation. In one of those five cases, CBP has agreed to produce 500 responsive, non-exempt pages per month. *See Center for Biological Diversity v. U.S. Army Corps of Engineers*, 1:17-cv-01037-EGS (D.D.C.), Dkt. No. 13, ¶4.

10. The EO and Border Wall FOIA request litigation has national implications. In contrast, the instant case represents another category of FOIA litigation that involves complex requests that are local in scope but to which thousands of potentially responsive, non-exempt documents are responsive. There are approximately 10-20 other such requests in litigation and resources must be assigned to respond to court-imposed production deadlines in these cases, which can result in the processing of more recently filed requests before earlier filed requests.

11. The FOIA Division is also subject to a mandate from the Department of Homeland Security to reduce the backlog of FOIA requests. Based upon my experience, in a typical fiscal year, approximately 85% of the total volume of FOIA requests will be simple requests and 15% of the total volume will be complex requests. Given the greater number of simple requests, these are the type that most quickly form a backlog. In order to comply with the mandate, resources must be pulled from complex requests to address the backlog of simple requests. There are approximately 5900 total requests that are backlogged, the majority of which are simple requests. The FOIA Division receives approximately 365 new requests each business day. Due to the volume of simple requests, FOIA Division staff must be dedicated to responding to simple requests to comply with the mandate.

12. I conducted a search of FOIA Online, which is the Agency's FOIA request tracking system, for requests that are as old as, or older than, Plaintiffs' 2015, request, and found 12 older

4

requests, all of which are complex requests. There is at least one FOIA Division employee who is responsible for tracking these older requests as a special project, and one FOIA Division employee assigned to each request. In light of the competing demands on FOIA resources, as detailed above and in my September 28, 2018, declaration, these older FOIA requests are not handled on a first-in, first-out basis. At this time, given the number of production deadlines the CBP FOIA Division is required to meet, the individuals responsible for the 12 older requests do not have time to allot to them because they have been pulled onto reviewing documents related to the litigation described above or reducing the backlog pursuant to the DHS mandate. The special project employee spends approximately 10-15 hours per week addressing the older requests; however this employee is frequently pulled from the task because of litigation-driven production deadlines. The age of these requests does not control the place they have in the processing line. They do not necessarily take priority over Plaintiffs' requests simply because they are older. For all of the reasons discussed above in paragraphs 7-11, more recently-filed cases frequently move ahead in the line in front of older cases.

13. Three CBP FOIA employees work full time on the EO FOIA litigation; if there is a lull, they assist with responding to other requests in litigation. Three CBP FOIA employees work full time on the Border Wall FOIA litigation. Two CBP FOIA employees are assigned to "other" litigation as described in paragraph 10. The remaining CBP FOIA employees are assigned primarily to respond to simple requests and to comply with the DHS mandate.

14. Until now, the production of documents in this case has been relatively straightforward, because the format of the documents in Category A and B were uniform among documents: the Categories A and B documents only involved the discrete information fields found in apprehension logs and in the I-213 and I-44 forms. Unlike the Categories A and B documents,

the Category C documents request records describing policies and procedures, which vary widely in format and content, and must be carefully reviewed to make sure privileged information is redacted. Not all CBP FOIA employees possess the skills and training to conduct the requisite review of such documents. Out of the employees at the FOIA division, only a handful have such skills and training, and the majority of these employees are already engaged full-time in responding to the EO and Border Wall FOIA requests.

15. I understand that Plaintiffs have now narrowed their requested documents to only comprise those documents responsive to their 2017 FOIA request, but their narrowed set of documents would still require the Agency to produce 3,728 pages per month. Review of documents that are responsive to complex requests can be completed at an approximate rate of 15 pages per hour, or one page every four minutes, per employee. It would therefore require approximately 248 man-hours each month to operate at this rate, which translates to approximately two full time employees. For the reasons described, an order from this court to produce the documents on plaintiffs' timeline would necessarily pull the equivalent of two full time individuals off of other high priority matters, and would affect the agency's ability meet deadlines in other cases.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Signed this 23rd day of October, 2018.

Patrick A. Howard
Branch Chief
Freedom of Information Act Division
U.S. Customs and Border Protection
U.S. Department of Homeland Security