## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MICHIGAN IMMIGRANT RIGHTS
CENTER, DR. GEOFFREY ALLAN
BOYCE, DR. ELIZABETH
OGLESBY, and AMERICAN CIVIL
LIBERTIES UNION OF MICHIGAN,

        Plaintiffs,

vs.

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY and
UNITED STATES CUSTOMS AND
BORDER PROTECTION,

        Defendants.

Case No. 2:16-cv-14192

Hon. Mark Goldsmith

**PLAINTIFFS' JOINT PETITION
FOR ATTORNEYS' FEES AND
COSTS**

_____

Plaintiffs, jointly and by their respective counsel, state the following as their Joint Petition for Attorneys' Fees and Costs.

1.    Over five years ago, on May 21, 2015, Plaintiffs submitted a request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 et seq. seeking information related to Custom and Border Protection's (CBP) activities within the "100 mile zone" within which CBP purports to be able to conduct warrantless searches, a zone which CBP asserts covers the entire state of Michigan. *See, e.g.*, 8 C.F.R. § 287.1(b).

2.     The 2015 FOIA request sought four categories of documents: (A) apprehension logs; (B) documents showing individual stops; (C) policy and procedure documents regarding interior enforcement; and (D) documents about complaints.

3.     Despite exhaustive efforts by the Plaintiffs, including administrative appeals, more than 18 months later CBP had produced only three redacted spreadsheets and a related coding sheet responsive to the Category A request. No documents responsive to the Category B, C, and D requests were produced.

4.     In response to Defendants' recalcitrance, Plaintiffs commenced this action on November 30, 2016. After three and half years of litigation, Plaintiffs have finally succeeded both in prying documents out of the agency under several court-ordered production schedules, and in challenging redactions and withholding of key information that CBP initially claimed was exempt under FOIA.

5.     As the Court is aware, CBP, through delay, inadequate staffing, and other failures, has dragged this case out for years. *See* ECF 62, Pg.ID# 1356-1363 (summarizing history of litigation).

6.     The record shows that CBP refused to produce all but a handful of documents before this litigation commenced. And even after litigation commenced, the government delayed at every turn, while claiming exemptions for the most basic information, such as geographic locations, which other law enforcement

2

agencies routinely provide. It was not until the parties had exhaustively briefed and argued those redaction issues at a court hearing that CBP finally agreed to release the redacted information. Moreover, when the government finally started complying, at a snail's pace, Plaintiffs demonstrated to the Court that the government was both overestimating the time required and devoting insufficient resources to complete the document productions in a reasonable timeframe, resulting in production orders that enabled the Plaintiffs to obtain the documents years earlier than they would have, absent those orders. Plaintiffs also successfully negotiated with Defendants over redactions and other issues, resulting in numerous stipulated Court orders requiring Defendants to unredact particular information or reproduce certain documents. And at the end of the litigation, the Defendants, without justification, blew past the final production deadline of December 11, 2019, and waited almost two weeks to inform the Court that they had violated its order. Plaintiffs then brought a motion for sanctions, ECF 79. Productions are now complete, and this Court has dismissed the case, regaining jurisdiction for purposes of deciding the Plaintiffs' pending motion for sanctions, ECF 79, and the present motion for attorneys' fees and costs. ECF 87.

7. Under FOIA, "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case

3

under this section in which the complainant has substantially prevailed." 5 U.S.C.
§ 552(a)(4)(E).

8.     A request for an award of fees and costs under FOIA is subject to a
two-part test: (1) whether the plaintiff "substantially prevailed" and is therefore
eligible for fees, and (2) whether the plaintiff qualifies for such an award based
upon the court's "equitable discretion." *GMRI v. EEOC*, 149 F.3d 449, 451 (6th
Cir. 1998). Plaintiffs easily meet both parts of the test.

9.     With respect to the first part of the test, Plaintiffs have substantially
prevailed because they have secured both judicial orders and enforceable written
agreements requiring production of records that CBP had withheld or redacted. 5
U.S.C. § 552(a)(4)(E)(ii)(I). Plaintiffs have also substantially prevailed because
they obtained changes in the agency's position as a result of this litigation, 5
U.S.C. § 552(a)(4)(E)(ii)(II).

10.     Plaintiffs also meet the second part of the test, equitable balancing,
which requires consideration of the public benefit, the nature of the requestors'
interest in the records, and whether the agency's withholding had a reasonable
basis in law. *GMRI,* 149 F.3d at 451. The information sought here regarding the
100-mile zone is of great public interest, the requestors have no commercial
interest in that information, and CBP did not have a reasonable basis in law to

4

withhold—for years—the documents it was ultimately required to produce as a result of the court orders in this case.

11.     The fees Plaintiffs seek are reasonable. The attorneys' time sheets set out in detail the work undertaken to by Plaintiffs' counsel to secure these results. The rates requested are appropriate, as set out the supporting declarations.

12.     In the interests of billing discretion, Plaintiffs have deducted $105,280 in attorney time from their request for fees.

13.     Pursuant to E.D. Mich. L.R. 7.1, Plaintiffs sought concurrence in the relief requested here, but concurrence was denied.

14.     For the reasons set forth in the attached Brief, exhibits, and declarations, Plaintiffs are entitled to $408,291 in attorneys' fees and $1,169 in costs for work performed through June 22, 2020. *See Summary of Fees and Costs*, Ex. A.

Dated: June 24, 2020

Respectfully submitted,

**DYKEMA GOSSETT PLLC**

By:/s/ *Dante A. Stella*
Dante A. Stella (P60443)
Nina Gavrilovic (P81214)
Attorneys for Plaintiffs
Michigan Immigrant Rights Center,
Geoffrey Alan Boyce, and Elizabeth
Oglesby
400 Renaissance Center
Detroit, MI 48243
(313) 568-6693
dstella@dykema.com

Miriam Aukerman (P63165)
American Civil Liberties Union
 Fund of Michigan
1514 Wealthy Street, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

Daniel S. Korobkin (P72842)
Monica C. Andrade (P81921)
American Civil Liberties Union
 Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org

6

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MICHIGAN IMMIGRANT RIGHTS
CENTER, DR. GEOFFREY ALLAN
BOYCE, DR. ELIZABETH                    Case No. 2:16-cv-14192
OGLESBY, and AMERICAN CIVIL
LIBERTIES UNION OF MICHIGAN,           Hon. Mark Goldsmith

      Plaintiffs,

vs.

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY and
UNITED STATES CUSTOMS AND
BORDER PROTECTION,

      Defendants.

_____

**BRIEF IN SUPPORT OF PLAINTIFFS' JOINT PETITION FOR
ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

STATEMENT OF QUESTIONS PRESENTED.................................................... iv

STATEMENT OF MOST CONTROLLING AUTHORITY ..................................v

INTRODUCTION ...................................................................................................1

FACTS AND PROCEDURAL HISTORY ...............................................................2

    A.    CBP and the 100 Mile Zone in Michigan ............................................2

    B.    Plaintiffs' Unsuccessful Pre-Litigation Efforts to Obtain Records.......2

    C.    Plaintiffs' Success in Obtaining Records Through This Litigation. .....4

    D.    Plaintiffs' Prior Interim Fee Petition....................................................9

ARGUMENT .......................................................................................................10

    A.    PLAINTIFFS ARE ELIGIBLE AND ENTITLED TO RECOVER
           FEES AND COSTS ............................................................................11

         1.  Plaintiffs are Eligible to Recover Fees and Costs Under the
            FIOA. .........................................................................................11

         2.  Plaintiffs are Entitled to Recover Fees and Costs Under the
            Equitable Factors Test................................................................13

    B.    THE ATTORNEYS' FEES SOUGHT BY PLAINTIFFS ARE
           REASONABLE.....................................................................................18

         1. The Hours for Which Fees are Sought are Reasonable. ................18

         2.  The Rates Sought for the Attorneys Are Reasonable. ...................19

              A. Attorneys from Dykema Gossett ................................................21

              B. ACLU of Michigan Attorneys ....................................................22

C.  AN APPROPRIATE FEE AWARD MAY MAKE IT
    UNNECESSARY FOR THE COURT TO RESOLVE THE
    SANCTIONS DISPUTE. ....................................................................24

D.  THE COURT SHOULD AWARD PLAINTIFFS THEIR COSTS. ..25

CONCLUSION AND RELIEF REQUESTED ........................................................25

## <u>STATEMENT OF QUESTIONS PRESENTED</u>

Should the Court grant reasonable attorneys' fees to Plaintiffs based upon the proceedings and results?

     Plaintiffs answer, "Yes."

     Defendants would answer, "No."

     The Court should answer, "Yes."

## STATEMENT OF MOST CONTROLLING AUTHORITY

5 U.S.C. § 552

*Autoalliance Intern., Inc. v. U.S. Customs Service*, 300 F.Supp.2d 509 (E.D. Mich. 2004)

*Church of Scientology of California v. U.S. Postal Service*, 700 F.2d 486 (9th Cir. 1983)

*Communities for Equity v. Michigan High School Athletic Association*, 2008 U.S. Dist. LEXIS 25640 (WD Mich, Mar. 31, 2008)

*Cotton v. Heyman*, 63 F.3d 1115 (D.C. Cir. 1995)

*Cuneo v. Rumsfeld*, 553 F.2d 1360 (D.C. Cir. 1977)

*Davy v. CIA*, 550 F.3d 1155 (D.C. Cir. 2008)

*GMRI v. EEOC*, 149 F.3d 449 (6th Cir. 1998)

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)

*United Association of Journeyman and Apprentices of the Plumbing & Pipefitting Industry, Local 498 v. Department of the Army, Corps of Engineers*, 841 F.2d 1459 (9th Cir. 1988)

## INTRODUCTION

This case arose out of Plaintiffs' May 21, 2015 Freedom of Information Act ("FOIA") request to Customs and Border Protection (CBP)—the nation's largest law enforcement agency—for records relating to the government's actions within the so-called "100 mile zone," an area where CBP asserts that it has the legal ability to conduct warrantless searches and which CBP apparently believes covers the entire state of Michigan. When CBP failed to produce records, Plaintiffs sued. Because public knowledge of government activities is "a structural necessity in a real democracy," *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-72 (2004), FOIA contains robust fee provisions to ensure people are compensated if they are forced to litigate in order to shed light on their government's activities.

Here Plaintiffs have spent more than **five years** trying to find out about CBP's actions within the so-called "100 mile zone." There is no question that this litigation was necessary to pry records out of CBP's hands. CBP would not have produced the documents it ultimately produced, let alone produced at the rate it did or without the redactions it originally asserted, absent this litigation. As a result, Plaintiffs are entitled to recover fees and costs. *See* 5 U.S.C. § 552(a)(4)(E).

FOIA work is laborious, and Plaintiffs' actual expenses for litigating this matter are approximately $515,000. However, in the interests of billing discretion, Plaintiffs have agreed to deduct $105,280. Plaintiffs respectfully request an award

of \$409,460 in fees and costs, an amount which is fully supported by contemporaneously recorded billing records and reasonable billing rates in this jurisdiction.

## FACTS AND PROCEDURAL HISTORY

### A.    CBP and the 100 Mile Zone in Michigan

The central mission of CBP is to "safeguard America's borders…"[1] Given the special law enforcement concerns at the border, Congress has authorized certain searches and seizures without a warrant within a "reasonable distance" of an international border "to prevent the illegal entry of aliens into the United States." 8 U.S.C. §1357(a)(3). Under now-outdated regulations, that distance shall not be more than 100 air miles from an international border. 8 C.F.R. §287.1(b).

Despite the public importance of law enforcement transparency, little information is publicly available regarding the extent to which CBP is conducting warrantless searches and seizures far from the Canadian border and the extent to which CBP may be trammeling the rights of people in Michigan. A map obtained from Border Patrol purports to show that the entire state is within the 100-mile zone. Border Patrol Map, ECF 32-2, PgID 902. That a federal agency has declared an entire state open for warrantless searches is a matter of great public concern.

### B.    Plaintiffs' Unsuccessful Pre-Litigation Efforts to Obtain Records.

More than **five years ago**, on May 21, 2015, Plaintiffs submitted their initial

_____

[1] CBP Mission Statement, available at https://www.cbp.gov/about.

FOIA Request ("2015 FOIA"). That request sought four categories of documents for 2012-2014: (A) documents reflecting statistics on Daily Apprehension Logs; (B) forms and records related to individual stops and detentions; (C) documents on interior enforcement; and (D) documents about complaints. Plaintiffs also asked for expedited processing and a fee waiver. *See* Am. Compl., ECF 22; 2015 FIOA Request, ECF 22-2, PgID 310-30; FIOA Request Email, ECF 22-3, PgID 332.

CBP did not answer the request but did, on October 6, 2015 (after four and half months), deny expedited processing with a boilerplate letter. 10/6/2015 CBP Email, ECF 22-6, PgID 358. On October 21, 2015, CBP notified the Plaintiffs that the fee issue was moot as "the request is not billable." 10/21/2015 CBP Email, ECF 22-8, PgID 363. On November 19, 2015, after another month passed with no production, Plaintiffs again wrote to the agency, reminding it that FOIA requires federal agencies to respond within 20 business days to record requests, 5 U.S.C. § 552(a)(6)(A)(i). 11/19/2015 Aukerman Letter, ECF 22-9, PgID 365-66. Because the 20-day period had long since elapsed, Plaintiffs construed the failure to respond as a constructive denial of the request, and appealed the failure to make a timely determination. *Id.* Plaintiffs also appealed the denial of expedited processing. *Id.*

It was not until January 12, 2016, **almost eight months after the request was filed**, that CBP produced *any* records in response to the 2015 FOIA Request. *See* 1/12/2016 CBP Letter, ECF 22-10, PgID 368. And then, the only thing CBP

3

produced were three spreadsheets summarizing the Category A apprehension data, along with a code sheet of abbreviations (totaling 4,624 pages). CBP redacted the data by removing numerous relevant fields, including all geographic information about where arrests occur. No Category B, C or D documents were produced.

On February 29, 2016, Plaintiffs administratively appealed CBP's redaction of Category A records and its failure to produce anything for Categories B, C, and D. *See* 2/29/2016 Dykema Letter, ECF 22-11, PgID 372-75. Plaintiffs also sought to work out a reasonable production schedule for the remaining records. *Id.* On May 9, 2016—almost a year after Plaintiffs submitted the 2015 FOIA—CBP administratively closed Plaintiffs' appeal because CBP said it was "actively processing" the FOIA. *See* 5/9/2016 Suzuki Letter, ECF 22-12, PgID 377-79. On September 30, 2016, CBP sent a further denial of the appeals. 9/30/2016 Suzuki Letter, ECF 22-13, PgID 381-86. CBP produced no further records voluntarily.

## C.    Plaintiffs' Success in Obtaining Records Through This Litigation.

On November 30, 2016, *more than 18 months* after Plaintiffs submitted the 2015 FOIA, with no productions other than three redacted spreadsheets and a code sheet, Plaintiffs filed their initial complaint. ECF 1, PgID 1-128. CBP answered on February 6, 2017, now 21 months after the FOIA request. ECF 16. On May 3, 2017, in response to the long delays and the staleness of the information that would be provided, Plaintiffs submitted a second FOIA Request ("2017 FOIA"), seeking

4

the same four categories of records as in the 2015 FOIA, but for the period from

January 1, 2015 on. ECF 22-18. On July 28, 2017, Plaintiffs filed their Amended

Complaint, now based on denials of both FOIAs. ECF 22, PgID 280-428.

Meanwhile, after negotiations, a few redacted documents trickled out:

- On March 10, 2017, 753 pages of partially redacted Category D records responsive to the 2015 FOIA.

- On April 6-7, 2017, 571 pages of Category C records responsive to the 2015 FOIA. Three documents were produced in full, for 17 pages, and the remaining 554 pages were redacted. At the same time CBP withheld 168 pages of documents in full under claimed FOIA exemptions.

*See* Proposed Scheduling and Discovery Plan, ECF 21, PgID 271-72.

With respect to Category B incident reports (I-213s and I-44s), CBP

contended they should be heavily redacted, including the redaction of all location

information, the propriety of which Plaintiffs disputed. Given that the format of I-

44s and I-213s is consistent, and given the number of responsive forms, the parties

agreed to attempt to resolve the redaction dispute before production. After further

negotiations, on May 8, 2017, CBP released 100 sample forms, totaling 376 pages,

as well as 7 pages of coding information. Discovery Plan, ECF 21, PgID 272-73.

On July 17, 2017, CBP provided a draft *Vaughn* index for the Category B, C

and D documents from the 2015 FOIA, as required by a Stipulated Scheduling

Order, ECF 21, PgID 277. On July 25, 2017, CBP began responding to the 2017

FOIA by producing Category A documents (apprehension log spreadsheets).

On September 8, 2017, Plaintiffs initiated discussions with CBP regarding the draft *Vaughn* index, expressing concerns with the thoroughness of Defendants' search and propriety of redaction. The parties then conferred extensively. Defendants ultimately released additional records and provided more detailed explanations of disputed redactions. For example, the Defendants released a "Law of Arrest, Search & Seizure Manual" used to train CBP officers, an organizational chart, threat assessments, and operation plans. In addition, the parties negotiated exhaustively over search terms and custodians to address problems with the adequacy of the search. The parties eventually reached agreement on virtually all of these issues. *See* Joint Status Report, ECF 25 (describing negotiations and productions); Joint Status Report, ECF 26 (same); Joint Status Report, ECF 27 (same).

There was, however, one critical redaction issue that the parties were unable to resolve, namely whether CBP should be allowed to withhold all geographic information. The parties thus filed cross-motions for partial summary judgment on that issue. CBP took the position that all geographic information was exempt from release under FOIA Exemption 7(E) (5 U.S.C. § 552(b)(7)(E)), as a law enforcement technique or procedure. ECF 28. Upon receiving that motion, Plaintiffs tried yet again to resolve the issue, first calling and then writing to offer possible compromise solutions, either by limiting geographic markers to the city/township level or by releasing a representative sample of the records. 3/28/18 Aukerman

6

Letter, ECF 32-9. However, CBP rebuffed these compromises. 3/16/18 Aukerman/Nestler Email Exchange, ECF 32-10. Plaintiffs were forced to proceed with litigating the geographic redactions. *See* Cross-Motion for Summ. Judg.; Opp. to Defs' Mot. for Summ. Judg., ECF 32, 37. Plaintiffs showed that the type of geographic information that CBP was withholding is routinely produced by law enforcement agencies. *See* ECF 32-11 to 32-19 (nine declarations from litigators).

The Court held oral argument on August 10, 2018, and ordered supplemental briefing. At that point, and in light of the Court's questioning, Defendants were, at long last, willing to negotiate. After further back-and-forth, CBP agreed to essent-ially the same compromises that Plaintiffs had offered before: production of every fifth I-213 and I-44, including geographic information at the city/township level. *See* Stip. Order Re Cross-Motions for Summ. Judg., ECF 41. The Order also set a three-month production schedule for those Category B documents, and required the parties to negotiate regarding a schedule for Category C and D documents. *Id.*

The parties then engaged in protracted negotiations over the Category C and D productions. Though Plaintiffs agreed to limit significantly the number of documents to be produced, the parties had very different visions of the timeline which should apply, an issue that ultimately had to be decided by the Court. Plaintiffs proposed a 9-month production schedule, while Defendants asked for 37 months. Joint Status Report, ECF 46. At a status conference on October 23, 2018,

7

the Court ordered CBP to report on the manpower assigned, as well as the expected pace of completion, and allowed the Plaintiffs to respond.

On November 26, 2018, after the parties had submitted competing proofs on the issue of a proper production speed, ECF 49, 51, the Court issued an Order Setting Production Schedule, ECF 52. The Court rejected CBP's arguments that it could only realistically produce 1,250 pages per month – and ordered it to produce a minimum of 3,356 pages per month (almost *three times the rate*). The Court also ordered CBP to complete production of Category A and B documents by the end of 2018 and produce all Category C and D documents on a rolling 10-month production schedule, with all production be completed by October 31, 2019[2]. ECF 52. That ten-month schedule is very close to what Plaintiffs requested, and is almost ten times faster than CBP's claimed normal rate of review. ECF 46, PgID 1259.

On February 13 and 28, 2019, the Court held status conferences, resulting in an order requiring the Defendant to produce *Vaughn* indices, something Defendants had opposed, and for the parties to address redaction challenges on a rolling basis. ECF 60. The parties were able, though negotiation, to resolve all remaining disputes regarding Defendants' redactions, resulting in a series of stipulated orders setting out, *inter alia*, what information Defendants would no longer redact (e.g. names of local law enforcement agencies, names of higher-level officials, task for

---

[2] That date was subsequently moved back due to the government shut-down.

names) and what documents would need to be reproduced without those redactions. Stip. Orders Resolving Redaction Challenges, ECF 69, 72, 86.

Under the Court's orders, the final production was to "occur no later than December 11, 2019." ECF 60, PgID 1339; ECF 72, Pg.ID# 1863. This schedule was to ensure that all motions would be filed by January 29, 2019. ECF 72, Pg.ID# 1868. Defendants did not, however, complete their productions by the deadline. Instead, on December 23, 2019—*about twelve days after the production deadline had passed*—Defendant filed a motion to extend the deadline. ECF 73. Plaintiffs opposed the motion, arguing that Defendants had had almost five years to gather the necessary documents. ECF 75. After a hearing, the Court granted Defendants' motion in part, ordering the Defendants to make the final production no later than February 14, 2020, and inviting Plaintiffs to file a motion for sanctions. ECF 76. The parties then briefed the sanctions issue. ECF 80, ECF 81, ECF 83. After Defendants at last produced the remaining documents, the parties entered a final stipulated order resolving the remaining production issues. ECF 87. The Court then entered a final order of dismissal, retaining jurisdiction to resolve attorneys' fees and costs issues, as well as the pending sanctions motion. ECF 87.

**D. Plaintiffs' Prior Interim Fee Petition**

On December 10, 2018, the parties, as the Court had directed, submitted a joint statement re attorneys' fees, jointly requesting that Court withhold judgment

9

on fees until conclusion of the litigation. ECF 53. The Court ordered plaintiffs to file an interim fee motion, ECF 59, which they did on April 1, 2019. ECF 62. The parties then briefed the fee issues. ECF 64, ECF 68. The Court denied the motion without prejudice, deferring decision until the case's conclusion. ECF 77.

## ARGUMENT

The Freedom of Information Act is specifically designed as "a means for citizens to know what their Government is up to." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-72 (2004). Because public knowledge of government activities is "a structural necessity in a real democracy," *id.*, FOIA contains robust fee provisions to ensure that citizens are compensated if they must litigate in order to shed light on their government's activities.

Under FOIA, "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). A request for an award of fees and costs is subject to a two-part test: (1) whether the plaintiff "substantially prevailed" and is therefore eligible for fees, and (2) whether the plaintiff qualifies for such an award based upon the court's "equitable discretion." *GMRI v. EEOC*, 149 F.3d 449, 451 (6th Cir. 1998).

Because Plaintiffs are eligible for and entitled to fees, and the fees and costs sought are reasonable, the Court should grant this motion.

**A.    PLAINTIFFS ARE ELIGIBLE AND ENTITLED TO RECOVER FEES AND COSTS.**

### 1.  Plaintiffs are Eligible to Recover Fees and Costs Under the FIOA.

A plaintiff who has "substantially prevailed" is eligible to recover fees and costs under FOIA. *GMRI*, 149 F.3d at 451.  The Act provides that a plaintiff "substantially prevails" if it has obtained relief through either:

(I)   a judicial order, or an enforceable written agreement or consent decree; or

(II)  a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

5 U.S.C. § 552(a)(4)(E)(ii).[3] Plaintiffs substantially prevailed under both tests here.

First, Plaintiffs prevailed under Section 552(a)(4)(E)(ii)(I) by obtaining judicial orders and enforceable written agreements governing what information CBP had to produce and on what schedule, including:

- The Court ordered CBP to produce a *Vaughn* index for Category C and D productions responsive to the 2015 FOIA, ECF 21, which allowed Plaintiffs to contest numerous redactions and withholdings, resulting in production of records and information that CBP had previously withheld.

- Under a stipulated order, entered after extensive briefing and argument, CBP was required to provide geographic information on I-213s and I-44s, and

---

[3] Thus a litigant substantially prevails "if it demonstrates that the prosecution of the lawsuit was reasonably necessary to obtain requested information, and that the existence of the lawsuit had a causative effect upon the release of that information." *GMRI*, 149 F.3d at 451-52 (holding plaintiff substantially prevailed where agency produced documents, post litigation, but without a court order). *See also Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984) (whether a plaintiff has "substantially prevailed" is "largely a question of causation").

produce those reports on a three-month production schedule. *See* Stipulated Order Resolving Cross-Motions for Partial Summary Judgment, ECF 41.

- The Court required CBP to produce the Category C and D documents responsive to the 2017 FOIA more than two years earlier than it had proposed, substantially accelerating production. The Court also rejected CBP's arguments that it could only realistically produce 1,250 pages per month – and ordered it to produce a minimum of 3,356 pages per month (almost three times the rate). Order Setting Production Schedule, ECF 52,

- The Court required CBP to produce *Vaughn* indices for Category C and D documents produced in response to the 2017 FOIA, which once again enabled Plaintiffs to challenge inappropriate redactions and withholding. Order to Produce Category C and D Documents, ECF 60.

- The Court entered numerous orders resolving various redaction challenges, including the Stipulated Orders Resolving Redaction Challenges to Category C and D Productions, ECF 69, ECF 72, and ECF 86.

Second, Plaintiffs have also clearly prevailed under § 552(a)(4)(E)(ii)(II) (providing for fees where there is "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial"). To the extent CBP "voluntarily" or "unilaterally" produced documents, that was precipitated by this "not insubstantial" lawsuit. During the 18 months before Plaintiffs filed suit, CBP turned over three spreadsheets and a code sheet. No Category B, C, or D documents were produced until after the suit was filed. Indeed, the responses were so stale that the 2012-2014 information had lost much of its value to inform *current* public debates, necessitating a **second** FOIA request for subsequent years' information and an amended complaint. Given CBP's utter failure to respond in a timely fashion, it is clear "that the prosecution of the lawsuit was reasonably necessary to

obtain requested information, and that the existence of the lawsuit had a causative effect upon the release of that information." *GMRI*, 149 F.3d at 451-52.

## 2. Plaintiffs are Entitled to Recover Fees and Costs Under the Equitable Factors Test.

Once a plaintiff is eligible for the fees, the court must then determine whether the plaintiff is entitled to the award based upon the court's "equitable discretion." *GMRI*, 149 F.3d at 451. The Sixth Circuit considers the following factors: "[1] the benefit to the public deriving from the case; [2] the commercial benefit to the complainant and the nature of its interest in the records; and [3] whether the agency's withholding [of the records] had a reasonable basis in law." *Id.* at 452 (citation omitted))[4]. In addition, an agency's "[r]ecalcitrant and obdurate behavior" can be dispositive regardless of other factors. *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1364-66 (D.C. Cir. 1977). Here, all three factors favor Plaintiffs.

First, the "public benefit" factor supports a fee award because the information obtained by Plaintiffs is "likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (citations omitted)[5]. Information that courts have found to confer

---

[4] Courts in other circuits have adopted a four-factor test to assess the equities, separating out whether the plaintiffs have a commercial interest in the records and what the nature of the plaintiff's interest is. However, those factors are related and often considered together. *Tax Analysts v. Dep't of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992). The Sixth Circuit in *GMRI* considered them together.

[5] In addition, *even the successful pursuit of FOIA relief in itself* is considered sufficient to show a public benefit:

a public benefit include disclosures that "br[ought] into question the practices and policies of the U.S. [Customs Service] with respect to the seizure of counterfeit goods," *Playboy Enter. v. U.S. Customs Serv.,* 959 F.Supp.11, 16 (D.D.C. 1997), that disclosed information relating to the government's Terrorist Surveillance Program, *Judicial Watch, Inc. v. U.S. Dept. of Justice*, 774 F.Supp.2d 225, 227 (D.D.C. 2011), and that disclosed information pertaining to whole body imaging technology used in scanners at airports, *Elec. Priv. Info. Ctr. v. U.S. Dept. of Homeland Sec.*, 811 F.Supp.2d 216, 234 (D.D.C. 2011) (*EPIC*).

The information obtained here is similar. Public access to these documents furthers transparency in the operation of CBP, particularly in its ability to sidestep the Fourth Amendment in a way that threatens the rights of citizens and non-citizens alike. The question of how CBP interprets the 100-mile zone in Michigan, and the extent to which CBP operates far from the border, is a matter of intense public interest and has been the subject of extensive media coverage. *See* 2017 FOIA, ECF 22-18, PgID 419, n.27. This information is critical because it allows the public, policymakers and the courts to assess the extent to which CBP is acting

---

The public has a unique interest in the enforcement and vindication of the FOIA. Each time an agency disregards its obligation to diligently answer and provide information in response to FOIA requests, the public is harmed. In the same sense, the public interest is served when, as in the case at bar, a court refuses to condone the agency's behavior by ignoring its unreasonable conduct.

*Autoalliance Intern., Inc. v. U.S. Customs Service*, 300 F.Supp.2d 509, 514 (E.D. Mich. 2004) (quotation omitted).

outside its authority. Am. Compl., ECF 22, PgID 281.

As a result of this litigation, the CBP produced and the public will have access to almost 25,000 pages of documents and various audio files detailing CBP's operations in the 100 Mile Zone in Michigan. The ACLU is completing analysis of these documents, which have revealed disturbing patterns of CBP behavior, including not only enforcement activity far from the border but extensive racial profiling. Andrade Decl. ¶ 8, Ex. B. That analysis, and the underlying documents, will be made available to the public in the near future. *Id.* at ¶ 9.

Second, the nature of the Plaintiffs' interests here supports an award of fees. "Favored interests are scholarly, journalistic or public-interest oriented." *Hammitt*, at 344. *See also Church of Scientology of California v. U.S. Postal Service*, 700 F.2d 486, 494 (9th Cir. 1983) ("an award of attorney's fees furthers the FOIA policy of expanding access to government information"). The ACLU of Michigan is a nonprofit dedicated to protecting civil liberties and civil rights in Michigan. The Michigan Immigrant Rights Center is a nonprofit legal resource center for Michigan's immigrant communities devoted to building a thriving Michigan where immigrant communities are fully integrated and respected. Plaintiffs Dr. Boyce and Dr. Oglesby are scholars who have analyzed the records obtained.

No Plaintiff has a commercial interest that would weigh against an award of fees. *See United Ass'n of Journeyman & Apprentices of the Plumbing & Pipefitting*

*Indus., Local 498 v. Dep't of Army, Corps of Eng'rs*, 841 F.2d 1459, 1461-62 (9th Cir. 1988) (finding of no commercial benefit weighs in favor of a fees "since the award section of the Act was intended to encourage complainants who lack substantial pecuniary incentives to pursue their claims). Rather, the purpose of these FOIA requests is to understand how the Government exercises its powers and whether this is being done in derogation of the Fourth Amendment.

Third, CBP bears the burden of "show[ing] that it had any colorable or reasonable basis for not disclosing the material until after [Plaintiffs] filed suit." *Davy v. CIA,* 550 F.3d 1155, 1163 (D.C. Cir. 2008). As CBP has effectively acknowledged by ultimately producing tens of thousands of pages of documents, it did not have a reasonable basis in law for failing to produce them at the outset. "[I]t is insufficient for an agency simply to claim that i[t] 'offered no resistance' and quickly responded to a FOIA request upon being subjected to suit." *EPIC,* 811 F.Supp.2d at 235 (quoting *Davy*, 550 F.3d at 1163). Only here, CBP did not respond quickly – it responded slowly and begrudgingly.

CBP will likely continue to claim that its glacial pace of production was due to staffing limitations. As the Eighth Circuit explained, however, claims of back-logs or administrative problems are "practical explanations not reasonable legal bases" for withholding, and therefore cannot justify denying a fee award:

> The FOIA does not contain a statutory exception for administrative inefficiency. When a private citizen is obliged to seek legal services in

16

> order to wrest from the government information which the government had no legal reason to withhold from him, he is entitled under the Act to be reimbursed for the cost to which he has been put.

*Miller v. Dep't of State*, 779 F.2d 1378, 1390 (8th Cir. 1985). The agency's choice not to adequately staff its FOIA office, particularly at a time when the agency is awash in resources, does not excuse its failure to comply with FOIA obligations.

With respect disputed redactions (e.g. redaction of *all* location information), CBP's refusal to provide *any* location information did not have a reasonable basis in law. *See* Attorney Decls., ECF 32-11 to 32-19 (law enforcement routinely provides geographic data). Even assuming the agency had a justification for denying pinpoint location information, it did not have a reasonable basis for withholding the city-level geographic information it ultimately produced. Because CBP produced information only after extensive litigation, Plaintiffs should receive fees.

Finally, the public benefit served by Plaintiffs' lawsuit is dispositive here. FOIA's legislative history makes clear that "[e]ach criterion should be considered independently, so that, for example, newsmen would ordinarily recover fees even where the government's defense had a reasonable basis in law, while corporate interests might recover where the withholding was without such basis." S. REP. NO. 93–854, at 171–72 (1974) (quoted in *Deininger & Wingfield, P.A. v. I.R.S.,* 2009 WL 2241569 \*6 (E.D. Ark. 2009)). Plaintiffs are public interest civil rights organizations and researchers seeking to shed light on the CBP's practice of

17

conducting warrantless searches far from the border. They stand to obtain no commercial benefit from exposing these practices, and easily satisfy the "public benefit" criterion. Thus, even if CBP could satisfy its burden of showing a reasonable basis for withholding any of the documents produced—which it cannot—Plaintiffs are still entitled to fees based on the public benefit criterion.

Because all of the equitable factors favor Plaintiffs, and because Plaintiffs substantially prevailed in this matter, the Court should grant Plaintiff's motion for reasonable attorneys' fees and costs.

## B.   THE ATTORNEYS' FEES SOUGHT BY PLAINTIFFS ARE REASONABLE.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "A court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome" and should deny fee awards only for work performed on claims "that bore no relation to the grant of relief' or were otherwise 'frivolous.'" *Hescott v. City of Saginaw,* 757 F.3d 518, 526 (6th Cir. 2014).

### 1. The Hours for Which Fees are Sought are Reasonable.

Complex federal FOIA litigation is time-consuming, involving discussions and negotiations, review of documents, court appearances, research, and filings—a workload that becomes even more taxing when the litigation stretches over years.

Ex. C, Burke Decl., ¶¶ 10-21 (time expended by Plaintiffs' counsel was reasonable considering complexity of FOIA litigation). This case was no exception, requiring judicial supervision throughout for CBP to meet—very belatedly—its FOIA obligations. What the existing 88 docket entries do not capture, however, is the hours Plaintiffs invested to keep things off the Court's docket.

Plaintiffs submit billing records which detail in tenth-of-an-hour increments the work performed. As the Sixth Circuit has noted, "'counsel . . . is not required to record in great detail how each minute of [ ] time was expended . . . [but] should identify the general subject matter of [ ] time expenditures.'" *United States ex rel. Lefan v. Gen. Elec. Co.*, 397 Fed. Appx. 144, 149 (6th Cir. 2010) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)). Here, Plaintiffs' billing records show the date, name of the attorney, and description of time sought, as well as time expended for which no reimbursement is requested.

Plaintiffs seek fees for all reasonable time through June 22, 2020 spent litigating this matter. In their billing discretion, Plaintiffs are not seeking reimbursement for $105,280 in attorney time—a 20% reduction—including time:

- Preparing the 2015 FOIA and administrative appeals;
- Preparing the Motion to Deem Certain Allegations Admitted, ECF 14;
- Other adjustments, as reflected on the time sheets, to account for duplication of effort, time reasonably attributable to training, or other inefficiencies.

### 2. The Rates Sought for the Attorneys Are Reasonable.

For Dykema Gossett attorneys, the rates sought are at or below the

19

attorney's actual billing rate. *Communities for Equity v. Mich. High Sch. Ath. Ass'n*, 2008 U.S. Dist. LEXIS 25640, at *34-35 (W.D. Mich., Mar. 31, 2008) (an "attorney's normal billing rate will often show the market value of the services provided"); E.D. Mich. LR 54.1.2 (considering "the rate customarily charged by counsel for such work"). For the attorneys from the ACLU, who do not bill their clients and therefore do not have standard billing rates, the requested hourly rates are based on what attorneys with comparable skills and experience bill in the same market.[6] The chart below summarizes the requested rates and comparable rates:

| Name | Grad Year | Years of Practice | Dykema Rate | Clark Hill Comp | Varnum Comp | Proposed Rate |
|------|-----------|-------------------|-------------|-----------------|-------------|---------------|
| Damren | 1975 | 45 | $650 | N/A | | $650 |
| Stella | 1999 | 21 | $490 | N/A | | $490 |
| Aukerman | 2000 | 20 | $490 | Comparable/Standard Rate | | $490 |
| Wheaton | 2015 | 5 | $310 | N/A | | $310 |
| Gavrilovic | 2016 | 4 | $340 | N/A | | $325 |
| Caballero | 2016 | 4 | $340 | Comparable/Standard Rate | | $300 |
| Andrade | 2017 | 3 | $340 | Comparable/Standard Rate | | $300 |
| Zhang | 2019 | Law student | $220 | Comparable/Standard Rate | | $150 |

The rates proposed for Plaintiffs' attorneys are supported by the attorneys' background and credentials—including their experience, reputation, and ability. *See* Declarations, Exs. B, D - G. In addition, Plaintiffs refer to The National Law

---

[6] The declarations on comparable rates were obtained for the interim fee petition, and thus understate current rates. In addition, the regional rates being sought are significantly below the comparable rates for national litigators working on complex FOIA cases. Ex. C, Burke Decl. ¶¶ 5, 9. Plaintiffs' decision to litigate this case here, rather than in Washington D.C., substantially reduced the rates.

Journal's *2019 Survey of Law Firm Economics*. Ex. H. That recent survey of law firm economics found the median rate for partners in our region to be $503 per hour and the median rate for associates to be $338 per hour. *Id*. at 22 (East North Central Region). When looking specifically to Michigan, the survey found that the median rate for partners was $490 per hour and the median rate for associates was $290. *Id*. at 25. Plaintiffs proposed rates are reasonable and are the median rates for this area.

### A. Attorneys from Dykema Gossett

For Dante Stella, Plaintiffs request $490/hour. Mr. Stella is a 1999 law graduate of the University of Michigan. Mr. Stella has a practice specializing in physical and electronic discovery in the context of responding to government investigations (criminal and regulatory) and class actions in a variety of industries (manufacturing, banking, insurance, energy, health care, sales and distribution, logistics, and construction, among others). The requested $490 rate is a weighted average of his national and regional rates. *See* Naasko Decl. ¶¶ 18-24, Ex. D.

For Samuel C. Damren, a senior complex litigation attorney with over forty years of experience, Plaintiffs request $650 per hour, which is Mr. Damren's regional billing rate. Mr. Damren began his career as a trial prosecutor in Detroit, first with Wayne County and then with the United States Attorney's Office. Since entering private practice in 1981, Mr. Damren has counseled and represented

privately and publicly held entities in civil and criminal litigation, business planning and transactional work. *See id.* at ¶¶ 10-14.

Plaintiffs request a $325 per hour rate for Nina Gavrilovic, a product liability and class action litigation associate, who graduated *cum laude* from University of Detroit Mercy School of Law in 2016. *See id.* at ¶¶ 25-27. Plaintiffs request a $310 per hour rate for Corey Q. Wheaton, a labor and employment litigation associate, who graduated *magna cum laude* in 2015 from the University of Toledo School of Law. *See id.* at ¶¶ 15-17. In the interests of billing discretion, Plaintiffs have substantially reduced the amount of time sought for Mr. Wheaton, and are not seeking reimbursement for time spent by Lauren Philips, a third associate involved in the early stages of this case. *Id.* at ¶ 17.

### B. ACLU of Michigan Attorneys

Ms. Aukerman is a 2000 *summa cum laude* graduate of New York University School of Law, and clerked on the U.S. Second Circuit Court of Appeals for Judge Pierre Leval. She spent the first decade of her career at Legal Aid of Western Michigan. In 2010 she joined the ACLU of Michigan, where she now serves as a senior staff attorney and litigates some of the most important and complex cases brought by the ACLU. *See* Aukerman Decl., ¶¶ 2-13, Ex. E.

In private practice, an attorney like Ms. Aukerman—who graduated law school one year after Mr. Stella—would be billing at a rate comparable to his. *See*

Naasko Decl., ¶ 4, Ex. D. Rates at Varnum and Clark Hill are comparable. DeWaard Decl., ¶ 4, Ex. I; Turner Decl., ¶ 7, Ex. J. Three years ago, in 2017 the 95th percentile rate—which is appropriate given Ms. Aukerman's qualifications— was $485 for civil rights attorneys. *2017 Bar Survey*, Table 7, p. 5, Ex. K. The rate in downtown Detroit, where this case was litigated, was $550/hour. *Id.*, Table 6, p. 5. Ms. Aukerman's past fee awards support the requested $490/hour rate.[7]

Plaintiffs request a rate of $300/hour for Juan Caballero, a 2016 graduate of New York University School of Law, and Monica Andrade a 2017 graduate of Michigan State College of Law. Caballero Decl., Ex. F; Andrade Decl. B. A lawyer with comparable experience at Dykema would be billed at or above that rate. See Naasko Decl., ¶ 5, Ex. D. The requested rate is at or below the market rates for associates with comparable experience at other firms as well. DeWaard Decl., ¶ 5, Ex. I; Turner Decl., ¶ 8, Ex. J; *2017 Bar Survey*, Table 4, p. 4, Ex. K (95th percentile for 1-2 years of experience).

Plaintiffs request a rate of $150/hour for Jessica Zhang, a law student who graduated in 2019 from Harvard Law School and who worked on this case while clerking at the ACLU. Zhang Decl., Ex. G; *Missouri v. Jenkins*, 491 U.S. 274, 285

---

[7] For example, in *Barry v. Corrigan,* 79 F. Supp. 3d 712 (E.D. Mich. 2015) (*aff'd*, 834 F.3d 706 (6th Cir. 2016), the plaintiffs' fee petition sought $485/hour for Ms. Aukerman. The fee settlement of $910,908, which was approved by Judge Judith Levy, was ultimately based on negotiated fee rate of $425/hour. In *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), Ms. Aukerman secured a $1.8 million fee settlement approved by Judge Robert Cleland; that settlement amount was calculated at $450/hour for her time. *See* Aukerman Decl., ¶¶ 28-29, Ex. E.

(1989) (law clerk fees recoverable at market rates). The $150 rate requested here is below market. *See* Naasko Decl., ¶ 6, Ex. D; DeWaard Decl., ¶ 6, Ex. I; Turner Decl., ¶ 9, Ex. J. The 2017 Bar Survey reports average billing rate for attorneys with less than one year in practice as $197/hour; the 25th percentile for such attorneys was $150. *2017 Bar Survey*, Table 4, p. 4, Ex. K. The rate of $150/ hour is thus a conservative figure. In the ACLU's fee settlement in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), student attorney time was calculated at $150/hour. Aukerman Decl., ¶ 33, Ex. E.

## C. AN APPROPRIATE FEE AWARD MAY MAKE IT UNNECESSARY FOR THE COURT TO RESOLVE THE SANCTIONS DISPUTE.

After Defendants failed to meet the production deadlines set by this Court and failed to disclose that fact to the Court for almost two weeks, Plaintiffs moved for sanctions. ECF 79. Defendants responded by arguing, *inter alia*, that punitive monetary sanctions are barred by sovereign immunity, although they conceded that FOIA waives sovereign immunity as to attorneys' fees. ECF 80, Pg.ID 1936-37. For the reasons set out in Plaintiffs' Reply, ECF 83, Defendants are wrong, and sanctions are both within the Court's authority and appropriate. Plaintiffs recognize, however, that while the Court may well wish to hold Defendants accountable for disobedience of its orders, the Court, given the pressures of its docket, may not wish to delve into complex sovereign immunity issues in order to do so. Accordingly, Plaintiffs offer an alternative path to resolve the sanctions

24

issue, based on the fact that Defendants admit that there is no sovereign immunity bar to an award of attorneys' fees.

This Court has a great deal of "equitable discretion" in awarding fees, *GMRI*, 149 F.3d at 451, and may also consider an agency's "[r]ecalcitrant and obdurate behavior." *Cuneo*, 553 F.2d at 1364-66. The Court could simply factor Defendants' misconduct into its fee determination, either by considering that misconduct in its overall assessment of the reasonableness amount, or by multiplying the final fee award by a percentage that the Court deems appropriate.

## D.   THE COURT SHOULD AWARD PLAINTIFFS THEIR COSTS.

A prevailing FOIA plaintiff is entitled to costs. *Baez v. Dep't of Justice*, 684 F.2d 999 (D.C. Cir. 1982). Plaintiffs seek costs of $1,169, as itemized in Ex. A.

### CONCLUSION AND RELIEF REQUESTED

For the above-stated reasons, the Court should award Plaintiffs' attorneys' fees of $408,291 for work performed through June 22, 2020, and costs of $1,169.

Respectfully submitted,

Dated: June 24, 2020                    **DYKEMA GOSSETT PLLC**

By: /s/ Miriam Aukerman (w/ consent)     By:/s/ *Dante A. Stella*
Miriam Aukerman (P63165)                 Dante A. Stella (P60443)
Daniel S. Korobkin (P72842)              *Attorney for Plaintiffs*
Monica C. Andrade (P81921)               400 Renaissance Center
*American Civil Liberties Union*         Detroit, MI 48243;(313) 568-6693
*Fund of Michigan*                       dstella@dykema.com

25

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the Court's e-filing system which will send a notification of such filing to all participants.

/s/ *Dante A. Stella*