UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN IMMIGRANT RIGHTS
CENTER, et al.,

        Plaintiffs,                      Civil Action No. 2:16-cv-14192

v.                                              HON. Mark Goldsmith

U.S. DEPARTMENT OF
HOMELAND SECURITY, et al.,

        Defendants.
_____/

**OPINION & ORDER**
**DENYING PLAINTIFFS' MOTION FOR SANCTIONS (Dkt. 79)**

This matter is before the Court on Plaintiffs Michigan Immigrant Rights Center, Dr. Geoffrey Alan Boyce, Dr. Elizabeth Oglesby, and the American Civil Liberties Union of Michigan's joint motion for sanctions (Dkt. 79). Plaintiffs seek the imposition of sanctions against Defendants United States Department of Homeland Security ("DHS") and United States Customs and Border Protection ("CBP") under Federal Rule of Civil Procedure 37(b)(2), the Court's inherent authority, and statutory contempt power granted in 18 U.S.C. § 401. For the reasons stated below, the motion is denied.

**I. BACKGROUND**

In this action, Plaintiffs alleged that Defendants violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by withholding disclosable records requested by Plaintiffs in 2015 and 2017. Am. Compl. ¶¶ 77-79 (Dkt. 22). Among other forms of relief, Plaintiffs sought an injunction requiring Defendants to disclose the requested records. Id. ¶ 85. Ultimately, the parties stipulated that Defendants would produce certain requested documents (Dkt. 52), and the Court set forth a

production schedule requiring the final production of the documents to occur no later than December 11, 2019 (Dkt. 60).

Following what was supposed to be the final production on December 11, 2019, Defendants became aware that approximately 9,200 pages of documents remained unreviewed and unproduced. See Howard Decl. ¶ 18, Ex. 1 to Mot. to Extend (Dkt. 73-1). On December 23, 2019, Defendants filed a motion to extend the production deadlines (Dkt. 73), explaining that the pool of documents reviewed up until that point had erroneously incorporated documents created before January 1, 2015—documents that had been excluded from Plaintiffs' FOIA requests.

The Court convened a telephonic status conference in which Patrick Howard—the branch chief within CBP's FOIA Division who managed the document productions at issue—participated. During the conference, Howard explained that when CBP initially calculated the number of pages to be produced to Plaintiffs, documents pre-dating January 1, 2015 were removed. However, CBP's e-discovery vendor erroneously included documents pre-dating January 1, 2015 in the pool of documents Howard and his staff reviewed. Although such pre-2015 documents should not have been included, Defendants' initial reviewers and then Howard himself apparently failed to recognize that precious time was consumed reviewing unnecessary documents, thereby delaying the review of the final tranche of documents.

On January 2, 2020, the Court entered an order granting in part Defendants' motion to extend and ordering that Defendants make their final production of documents, with a Vaughn index, no later than February 14, 2020 (Dkt. 76). That order also expressly authorized Plaintiffs to file a motion for sanctions for Defendants' failure to comply with the Court's order calling for final production of documents by December 11, 2019.

Plaintiffs filed a motion seeking imposition of the following sanctions:

2

- $250 per day between the expiration of the December 11, 2019 production deadline and Defendants' filing of the December 23, 2019 motion to extend the production deadlines ($3,000 total);

- $250 per day between entry of the Court's January 2, 2020 order granting in part Defendants' motion to extend the production deadlines and the completion of the production, ordered to occur by February 14, 2020 ($10,750 total); and

- $1,000 per day for each day after February 14, 2020 until completion of the production.

Mot. at 3-4 (Dkt. 79).

Plaintiffs do not specify whether such fines would be payable to Plaintiffs or to the Court. In their reply, Plaintiffs indicate these requested sanctions "are specifically conditioned on whether Defendants meet the court ordered deadlines for the production of documents." Reply at 2 (Dkt. 83). Plaintiffs add that they will seek compensation for legal fees incurred as a result of Defendants' delay in their final motion for an award of attorney fees. Mot. at 8. However, they maintain that Defendants "must be punished" for their failure to comply with the Court's order setting forth the production schedule and their failure to promptly notify Plaintiffs or the Court of their error. Id.

On February 14, 2020, Plaintiffs received the final production of documents (Dkt. 86).

## II. ANALYSIS

Plaintiffs seek the imposition of sanctions under Federal Rule of Civil Procedure 37(b)(2) and under the Court's inherent authority and contempt power. As discussed below, Rule 37 is inapplicable because the dispute is outside of the context of discovery. The claim also fails under the Court's inherent authority, because Plaintiffs have not shown that Defendants have acted in

bad faith. Finally, the claim fails under the Court's contempt power, because Plaintiffs have not shown that Defendants acted willfully or intentionally.[1]

### A. Rule 37

Rule 37(b) authorizes a Court to impose sanctions for a party's failure to comply with discovery orders. For example, a court may treat a party's failure to comply as contempt of court or to strike claims from pleadings. See Fed. R. Civ. P. 37(b)(2)(A)(iii) and (vii). However, Rule 37 is plainly inapplicable under the present circumstances, as Defendants did not violate a discovery order. Defendants violated an order setting forth the schedule by which agreed-upon productions of documents were to take place—that is, an order providing substantive relief sought under FOIA—not an order mandating discovery of documents. Because Defendants' actions did not violate a discovery order, sanctions are unavailable under Rule 37.

### B. Inherent Authority

Federal courts are vested with the inherent authority to impose sanctions as necessary "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). That authority includes the power to punish for "'disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial.'" Id. at 44 (quoting Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 798 (1987) (citations omitted)). Yet "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion;" thus, courts must exercise discretion in "fashion[ing] an appropriate sanction for conduct which abuses the judicial process." Id. at 44-45. "Egregious misconduct may warrant the extreme sanction of total dismissal, but for

---

[1] Because none of these grounds supports an award of sanctions, the Court will not address whether sovereign immunity would bar sanctions.

lesser wrongdoing a court may assess attorney's fees and costs." Priority One Servs., Inc. v. W&T Travel Servs., LLC, 987 F. Supp. 2d 1, 4 (D.D.C. 2013).

To impose monetary sanctions—including attorney's fees and costs—under its inherent power, a court must find that the moving party has shown by clear and convincing evidence that the opposing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," or has willfully disobeyed a court's orders. Id. (citations and internal quotation marks omitted); First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 517 (6th Cir. 2002) ("[T]he imposition of inherent power sanctions requires a finding of bad faith").[2]

Conduct is undertaken in bad faith when it is motivated by improper purposes such as harassment or delay. First Bank, 307 F.3d at 519. However, "'negligent, even sloppy, performance by the defense counsel,' is insufficient to award monetary sanctions under a court's inherent power." Priority One, 987 F. Supp. 2d at 4 (quoting United States v. Wallace, 964 F.2d 1214, 1215 (D.C. Cir. 1992)). Therefore, the Court must evaluate Defendants' alleged wrongdoing against this very strict standard.

### 1. Plaintiffs have not demonstrated that counsel for Defendants or CBP employees involved in the litigation acted in bad faith.

Plaintiffs argue that individuals engaged in bad faith conduct, based on the delay in reporting the document review mishap and the mishap itself. See Mot. at 4-5. Neither basis is persuasive.

---

[2] Although monetary sanctions such as fee-shifting require a finding of bad faith, courts have recognized that not all sanctions imposed under a court's inherent authority require a finding of bad faith. See Rep. of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 74 n.11 (3d Cir. 1994) (citing Chambers, 501 U.S. at 59 (Scalia, J., dissenting)). There is no authority defining precisely what types of sanctions may be imposed under a court's inherent authority without a finding of bad faith. Because Plaintiffs are not seeking a non-monetary sanction, this Court need not determine whether a showing of bad faith would be required for such a sanction.

Plaintiffs maintain that Defendants' bad faith is evidenced by their delay in notifying Plaintiffs and the Court of the document review mishap until more than a week after the December 11, 2019 final production deadline had passed. While Defendants became aware of the issue on December 12, 2019, Resp. at 3 (Dkt. 81-1), they did not notify Plaintiffs immediately, and they did not file their motion to extend until December 23, 2019 (Dkt. 73). Defense counsel clarifies that upon learning of the issue, he directed CBP to investigate the scope and cause of the error. Resp. at 3. Defense counsel then required emergency surgery on December 17, 2019; nevertheless, he initially notified Plaintiffs of the error on December 18, 2019, and he later provided a page count for the remaining records on December 20, 2019. Resp. at 3. The delay in reporting the mishap does not seem inordinate.

The mishap itself is more troubling. Defendants maintain that the error resulting in noncompliance with the Court's production schedule was inadvertent and not deliberate. Resp. at 12. According to Defendants, CBP's e-discovery vendor erroneously included in the pool of records reviewed by Howard and his staff documents that had been excluded from Plaintiffs' FOIA request. Neither Howard nor any staff member recognized that their review included unnecessary documents.

As previously stated by the Court, Defendants have provided no valid explanation excusing their failure to realize, far earlier, either that some of the documents they were reviewing predated January 1, 2015, or that the number of pages remaining in the pool of documents being reviewed was greater than anticipated. See 1/2/20 Order Granting in Part Mot. to Extend Production Deadlines (Dkt. 76). What was said in that order bears repeating: this error was the product of complete and utter carelessness. Id. Moreover, this carelessness amounted to negligence. This negligent performance is consistent with Defendants' under-performance in other ways—notably,

6

the slothfulness displayed in failing to produce any documents to Plaintiffs until seven months after the first FOIA letter was sent in May 2015, followed by a delay of another year until the next batch of documents was produced.  See Proposed Scheduling and Discovery Plan at 2-7 (Dkt. 21).

Although Defendants' recent blunder reveals a high degree of ineptitude, this error nevertheless does not rise to the level of willfulness or bad faith. While Defendants' conduct, in many respects, has been underwhelming and hardly a model of efficient and professional executive action, the Court cannot find that Defendants' recent bungling was deliberate or motivated by an improper purpose.

### 2. Plaintiffs have not demonstrated that Defendants acted in bad faith by inadequately staffing their FOIA operations.

Plaintiffs maintain that Defendants willfully disobeyed the Court's production schedule in bad faith, given that their protracted production of documents was a direct result of woefully inadequate FOIA staffing.  That is, Plaintiffs contend that the most recent delay does not represent merely an episodic error, but rather a systemic failure to devote sufficient resources to enable CBP to meet its FOIA obligations, and that the systemic failure constitutes bad faith.

Rather than focusing on individuals, Plaintiffs argue that CBP's institutional failures, particularly, "the agency's failure to adequately staff its FOIA division," demonstrates bad faith. Mot. at 5.  Plaintiffs note that Howard, as the only individual in CBP's FOIA division familiar with the contours of the parties' negotiations, personally conducted a final review of all records produced, see Howard Decl. ¶ 10—thereby creating a bottleneck of voluminous records being reviewed by one person.  Plaintiffs also rely on DHS's 2018 FOIA Report to the Attorney General of the United States and the Director of the Office of Government Information Services ("Annual

Report"), which reports a backlog of 54,783 "complex" FOIA requests across the entirety of DHS.[3] Annual Report at 15. Plaintiffs highlight various statistics from the Annual Report, including that CBP reported an increase from 1,008 total backlogged FOIA requests at the end of 2017 to 6,660 backlogged requests at the end of 2018. Id. at 21. Further, CBP's total processed claims decreased by 12,729 from 2017 to 2018. Id.

Plaintiffs cite no cases finding bad faith attributable to the kind of institutional failures they allege exist at CBP. It is true, as Plaintiffs assert, that courts have viewed critically agency pleas for delays in responding to FOIA requests based on FOIA backlogs, but the judicial response has been to accelerate production or award summary judgment against the agency—not to impose sanctions based on bad faith. See, e.g., Donham v U.S. Dept. of Energy, 192 F. Supp. 2d 877, 883 (S.D. Ill. 2002) (citing cases adopting variation on these approaches, including Fiduccia v. United States Department of Justice, 185 F.3d 1035 (9th Cir. 1999); Hunter v. Christopher, 923 F. Supp. 5 (D.D.C. 1996); Hinton v. FBI, 527 F. Supp. 223 (E.D. Pa. 1981); Hamlin v. Kelley, 433 F. Supp. 180 (N.D. Ill. 1977)). Furthermore, Donham, a primary case Plaintiffs cite in support of their argument that the Court should find bad faith based on institutional failures, specifically declined to "second guess" the relevant agency's allocation of limited resources or its budget and personnel decisions. 192 F. Supp. 2d at 882.

Plaintiffs appropriately cite Jefferson v. Reno, 123 F. Supp. 2d 1, 7 (D.D.C. 2000), for the proposition that government agencies can be sanctioned for failing, as institutions, to comply with court orders. But that case involved considerably more egregious behavior, including a decision by one employee to intentionally disobey a court order. Id. at 7. Moreover, the agency's

---

[3] https://www.dhs.gov/sites/default/files/publications/dhs_fy2018_foia_report_updated.pdf.

sanctionable conduct was not akin to understaffing a FOIA division; rather, it was conduct directly related to that particular litigation.  Id. at 6-7.

Whether a court's inherent authority grants it the power to do what Plaintiffs request—sanction an agency for recklessly disregarding the risk that underfunding or understaffing the agency's FOIA division will predictably result in disobedience to court orders—is best left for another day.  What cannot be left for another day is Plaintiffs' failure to prove that Defendants recklessly disregarded such a risk, or that Defendants' disregard of that risk caused their failure to comply with the Court's order. This is illustrated in two ways.

First, while the Annual Report suggests that CBP's FOIA responsiveness lags behind some of its fellow DHS sub-agencies, it does nothing to illuminate the critical question of the relationship between CBP's funding and staffing priorities, on the one hand, and the likelihood that court orders would be disobeyed, on the other.

Second, the particular errors that caused CBP to miss the December 11 deadline were the e-discovery vendor's inclusion of pre-2015 documents and the failure of Howard and CBP staff to recognize that they were reviewing these irrelevant documents.  Plaintiffs have not explained why those errors must be attributed to institutional failure, rather than human error in this particular episode.  Plaintiffs have not meaningfully drawn into question Defendants' position that, but for the erroneous review of irrelevant documents, the last production would have been compliant with the Court's order.  Defendants' performance in this case leaves much to be desired, but it does not evidence bad faith, on an institutional or individual level.

### C. Civil and Criminal Contempt

Plaintiffs further request monetary sanctions by way of the Court's statutory contempt authority under 18 U.S.C. § 401.  Defendants argue that the Court may not impose punitive

9

monetary sanctions without affording Defendants certain procedural protections, including those under Federal Rule of Criminal Procedure 42.

The Sixth Circuit has described the distinction between civil and criminal sanctions as follows:

> The distinction between civil and criminal contempt lies in the purpose of the court's mandate. Civil contempt sanctions are designed to enforce compliance with court orders and to compensate injured parties for losses sustained. Criminal contempt sanctions, on the other hand, are imposed to vindicate the authority of the court by punishing past acts of disobedience. Accordingly, a fine that is payable to the complainant as compensation for damages caused by the contemnor's noncompliance or that is contingent upon performing the act required by the court's order is civil in nature, while an unconditionally payable fine is criminal. As the Supreme Court recently emphasized, a flat, unconditional fine [totaling] even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine though compliance.

Downey v. Clauder, 30 F.3d 681, 685 (1994) (internal citations and quotation marks omitted). Further, if a sanction is imposed for both punitive and compensatory purposes, the sanction is considered criminal. Nye v. United States, 313 U.S. 33, 42-43 (1941).

Proceedings for civil contempt "leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct." Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 831 (1994). But because criminal contempt is "a crime in the ordinary sense," constitutional protections apply to the same extent as they do in other criminal prosecutions. Downey, 30 F.3d at 686; see also Goodyear Tire & Rubber Co. v. Haeger, – U.S. – , 137 S. Ct. 1178, 1186 (2017) ("[T]he fee award may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior. To level that kind of separate penalty, a court would need to provide procedural guarantees applicable in criminal cases . . . ." (internal citations omitted)). Specifically, sanctions for indirect contempt committed outside the Court's presence require proof

beyond a reasonable doubt, as well as compliance with Federal Rule of Criminal Procedure 42(a) (requiring, for example, appointment of a prosecutor and a jury trial). Bagwell, 512 U.S. 821, 833-834 (1994); Clapper v. Clark Dev., Inc., 747 F. App'x 317, 324 (6th Cir. 2018).

Plaintiffs seek to impose fines of $250 per day for the period between the December 11, 2019 production deadline and Defendants' December 23, 2019 motion to extend the production deadlines, as well as for the period from the Court's January 2, 2020 order and the new deadline for final production on February 14, 2020. On their face, such fines would comprise unconditional monetary fines penalizing Defendants' failure to comply with the Court's production schedule. Thus, they would serve a penal purpose, rather than a coercive or a compensatory purpose. In fact, Plaintiffs directly state in their motion, "Defendants must be punished for their flat-out failure to comply . . . ." Mot. at 8 (emphasis added).

In their reply, Plaintiffs seem to abandon their request for the imposition of unconditional fines by offering the post-hoc clarification that the imposition of the fines described above would be conditioned on whether Defendants meet the court ordered deadline of February 14, 2020. However, because this opinion is being issued after that date, these fines would represent an unconditional monetary fine serving a penal, rather than coercive, purpose. Plaintiffs also requested the imposition of a conditional fine of $1,000 per day for each day after February 14, 2020, the production is not completed. However, the production was completed on February 14, 2020, so that request is moot. See Final Stipulated Order Resolving Redaction Challenges to Category C and D Productions (Dkt. 86).

In sum, Plaintiffs' requested sanctions under the contempt power would qualify as criminal. Defendants would be entitled to criminal procedural protections before sanctions could be issued. However, there is no cause to consider whether initiation of criminal proceeding would

be necessary.  "A criminal contempt conviction requires finding that the defendant: (1) had notice of the court order, (2) disobeyed it, (3) and did so with intent or willfulness." United States v. Bibbins, 3 F. App'x 251, 253 (6th Cir. 2001).  Having already determined that Defendants did not act in bad faith, the Court also finds that Defendants did not act willfully or intentionally to disobey its order.

### IV. CONCLUSION

For the reasons stated above, Plaintiffs' motion (Dkt. 79) is denied.

SO ORDERED.

Dated: September 21, 2020  
Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge