UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN IMMIGRANT RIGHTS
CENTER, et al.,

       Plaintiffs,                      Case No. 16-14192

vs.                                   HON. MARK A. GOLDSMITH

DEPARTMENT OF HOMELAND
SECURITY, et al.,

       Defendants.

_____/

**OPINION & ORDER**
**GRANTING IN PART PLAINTIFFS' JOINT PETITION FOR**
**ATTORNEY FEES AND COSTS (Dkt. 89)**

Plaintiffs Michigan Immigrant Rights Center, Dr. Geoffrey Alan Boyce, Dr. Elizabeth Oglesby, and American Civil Liberties Union of Michigan, initiated this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, after Defendants United States Department of Homeland Security (DHS) and United States Customs and Border Protection (CBP) failed to timely or adequately respond to Plaintiffs' FOIA request seeking the production of documents. Through the course of the litigation, however, Defendants ultimately produced the records sought. Plaintiffs now seek an award of attorney fees incurred in litigating the case (Dkt. 89).[1] Defendants oppose the petition, disputing Plaintiffs' eligibility to recover fees and challenging the billing rates and hours sought.

---

[1] This matter has been fully briefed. Because oral argument will not assist in the decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

In this opinion, the Court first addresses Plaintiffs' eligibility for fees, examining whether Plaintiffs substantially prevailed in the litigation and whether the equitable factors favor awarding attorney fees.  Because the litigation was the catalyst for Defendants' production of documents and resulted in a number of court orders and enforceable stipulated orders affording Plaintiffs the relief sought, the Court concludes that Plaintiffs substantially prevailed.  And because the action conferred a public benefit, was not initiated in furtherance of a commercial interest, and demonstrated that Defendants had no reasonable basis for withholding the documents, the equitable factors favor an award of fees.

Next, the Court evaluates the reasonableness of the fee award sought.  In ensuring the fee award is reasonable, the Court compares the billing rates sought to the prevailing market rates in Michigan, based on the attorneys' levels of experience.  Additionally, the Court examines the attorneys' billing entries in light of Defendants' challenges to the hours recorded.  Because the Court modifies the applicable billing rates and finds that certain hours must be excluded, the parties are to submit a proposed order setting forth an updated calculation of Plaintiffs' recoverable attorney fees and costs, consistent with the determinations in this opinion.  For these reasons and the reasons articulated below, the Court grants Plaintiffs' fee petition in substantial part.

## I.    BACKGROUND

To investigate whether CBP was acting beyond the scope of its statutory authority in conducting warrantless searches and seizures near international borders, Plaintiffs submitted a FOIA request on May 21, 2015, seeking Defendants' production of documents relating to their policies and practices in performing searches and seizures in Michigan.  5/21/15 FOIA Request,

Ex. A to Am. Compl. (Dkt. 22-2).[2]  Plaintiffs received no meaningful response or production of documents over the course of eight months until, on January 16, 2016, Defendants produced some Category A documents.  See 1/12/16 Initial Response Letter, Ex. I to Am. Compl. (Dkt. 22-10). At that time, Defendants sought to narrow the Category B request and deferred responding to the other document requests.  Id.  Plaintiffs received no further document productions over the following 14 months.

On November 30, 2016, some 18 months after submitting the FOIA request, Plaintiffs initiated the present action seeking an injunction requiring Defendants to disclose the requested records. Am. Compl. ¶¶ 77-79, 85 (Dkt. 22).  In March 2017, shortly after the complaint was filed, Defendants began producing a limited number of additional documents.  Joint Discovery Plan at 3-5 (Dkt. 21).  After the 21-month delay in production, however, the information provided was stale, causing Plaintiffs to file a second FOIA request seeking the same categories of documents for a more recent timeframe.  5/10/17 FOIA Request, Ex. Q to Am. Compl. (Dkt. 22-18).  Plaintiffs subsequently amended their complaint to incorporate this second FOIA request.  See Am. Compl. ¶ 13.

Throughout the nearly 40-month duration of this litigation, the parties were largely able to negotiate Defendants' production of the documents, with the exception of two significant disputes. First, in early 2018, the parties filed cross-motions for partial summary judgment, in which they disputed whether Defendants' redaction of geographic information from its productions was

---

[2] Plaintiffs sought four categories of documents, referred to as Category A, B, C, and D documents. Category A sought daily apprehension logs.  Category B sought records relating to individual stops and detentions. Category C sought records related to interior enforcement.  And Category D sought records concerning complaints received by DHS against CBP, including complaints alleging misconduct with respect to apprehension, arrest and seizure, detention, racial profiling, and collaborations with state and local law enforcement.  5/21/15 FOIA Request.

proper under FOIA Exemption 7(E), which is applicable to certain law enforcement techniques and procedures.  Defs. Mot. for Summ. J. (Dkt. 28); Pls. Mot. for Partial Summ. J. (Dkt. 32).  The Court held oral argument on the matter on August 8, 2018 and ordered supplemental briefing.  However, the parties stipulated on September 7, 2018 that they had resolved this dispute and arrived at an agreement whereby Defendants would produce a reduced number of documents with unredacted geographic information.  See 9/7/18 Stipulated Order (Dkt. 41).  Additionally, Defendants agreed to produce all of the remaining categories of documents responsive to both FOIA requests.  Id.

The second major dispute occurred in September 2018, when the parties disagreed regarding the timeline for Defendants to produce the remaining Category C and D documents.  See 9/28/18 Joint Prod. Schedule Status Report (Dkt. 46).  Plaintiffs proposed a schedule whereby production would take place over the course of nine months, while Defendants sought to produce documents over the course of 27 months.  11/26/18 Order (Dkt. 52).  The Court ultimately ordered a rolling production of the remaining documents over the course of approximately 11 months.  Id.  On March 25, 2019, the Court issued a revised production schedule requiring a final production to be made no later than December 11, 2019.  3/25/19 Order (Dkt. 60).

While Defendants made the rolling productions as ordered by the Court, the parties were able to resolve all remaining disputes regarding redactions, as memorialized in a series of stipulated orders.  See 6/26/19 Stipulated Order (Dkt. 69); 10/29/19 Stipulated Order (Dkt. 72); 3/23/20 Stipulated Order (Dkt. 86).  Following what was supposed to be the final production on December 11, 2019, Defendants became aware that approximately 9,200 pages of documents remained unreviewed and unproduced as a result of an administrative error.  1/2/20 Order (Dkt. 76).  The Court criticized Defendants for their extreme carelessness but granted an extension of

the production schedule, ordering that Defendants make their final production no later than February 14, 2020.  Id.

Ultimately, Defendants met the extended final production deadline of February 14, 2020. See 3/23/20 Stipulated Order.  Consequently, the Court entered an order on March 23, 2020, dismissing the action with prejudice but retaining jurisdiction to address any motion for attorney fees.  Order of Dismissal (Dkt. 87).  On June 24, 2020, Plaintiffs filed their present petition for attorney fees, in which they seek $410,405.20 in attorney fees and $1,168.65 in costs.  Pls. Billing Records, Ex. A to Reply (Dkt. 91-1).

## II.    DISCUSSION

Under FOIA, a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any [FOIA] case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E).  Courts determining whether to award attorney fees apply a two-part test evaluating whether (i) the plaintiff substantially prevailed such that he is eligible for an award and (ii) the plaintiff is entitled to an award based upon a balancing of equitable considerations.  GMRI, Inc. v. Equal Emp't Opportunity Comm'n, 149 F.3d 449, 451 (6th Cir. 1998).  The Court first examines Plaintiffs' eligibility to recover fees under this two-part test. Concluding that Plaintiffs are entitled to recover their fees, the Court then examines the reasonableness of those fees—specifically, the reasonableness of the hourly rates and the number of hours claimed.

### A.  Eligibility for Fees

#### 1.  Plaintiffs Substantially Prevailed

A plaintiff substantially prevails in a FOIA action if relief is obtained through either (i) "a judicial order, or an enforceable written agreement or consent decree" or (ii) "a voluntary or

unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E).  That is, even if a plaintiff does not obtain a court order compelling the production of documents, "it still will have substantially prevailed if it demonstrates that the prosecution of the lawsuit was reasonably necessary to obtain requested information, and that the existence of the lawsuit had a causative effect upon the release of that information."  GMRI, 149 F.3d at 451-452.

Plaintiffs have substantially prevailed in the litigation under both theories.  The chain of events illustrates that the present action was the catalyst for Defendants' production of documents, given that Defendants did not begin production in earnest until Plaintiffs filed suit.  Before Plaintiffs filed suit, Defendants made only one partial production on January 12, 2016—eight months after Plaintiff made their first FOIA request on May 21, 2015.  See 1/12/16 Initial Response Letter.  This production included only one code sheet and three spreadsheets spanning 4,624 pages, see id., when the full production of the Category C and D documents alone encompassed approximately 7,600 documents spanning over 33,000 pages, see 11/26/18 Order at 2.  The letter also deferred responding to the Category C and D document requests and sought to narrow the Category B document request by producing only one in every ten records.  1/12/16 Initial Response Letter.

With Defendants failing to make any additional productions or otherwise respond to the pending FOIA requests over the following ten months, Plaintiffs filed suit on November 30, 2016.  Even after Plaintiffs filed suit, Defendants' productions were, at best, lackadaisical.  From March 2017 through May 2017—14 months after the first production and nearly two years after the first FOIA request was made—Defendants produced a limited number of documents, including a representative sample of 100 Category B documents, 571 pages of Category C documents, and

6

753 pages of Category D documents responsive to the first FOIA request.  Joint Discovery Plan at

3-5.  And in July 2017, Defendants partially responded to the second FOIA request by producing

the Category A documents, 8/4/17 Joint Disc. Plan at 3 (Dkt. 23)—a production Defendants

maintain amounted to 5,648 pages, Resp. to Interim Mot. for Fees at 2-3 (Dkt. 64).  However,

Defendants produced no further documents, let alone in any systematic fashion, until the Court

entered the order setting an accelerated production schedule on November 26, 2018, over a year

later.

Given the protracted amount of time that passed without receiving a satisfactory response

from Defendants, filing suit was reasonably necessary for Plaintiffs to obtain the documents

requested.  See, e.g., DixieFuel Co. v. Callahan, 136 F. Supp. 2d 659, 663-664 (E.D. Ky. 2001)

(finding that filing a lawsuit eight months after submitting a FOIA request was reasonably

necessary because agency inaction and claims of delays gave the plaintiff no reasonable assurance

that the request would be answered); Ettlinger v. Fed. Bureau of Investigation, 596 F. Supp. 867,

879 (D. Mass. 1984) (finding that a lawsuit was necessary where the initial FOIA request went

unanswered for more than 18 months except for an agency letter informing the plaintiff of

processing delays).  Additionally, the fact that Defendants produced a minimal number of

documents before Plaintiffs filed suit does not undermine a finding that the lawsuit was the catalyst

for later productions.  See, e.g., Miller v. U.S. Dep't of State, 779 F.2d 1378, 1381-1382, 1389

(8th Cir. 1985) (finding that a lawsuit served as the catalyst for the Government's production of

hundreds of responsive documents where it produced only seven responsive documents before the

plaintiff filed suit); Am. Immigration Council v. U.S. Dep't of Homeland Sec., 82 F. Supp. 3d 396,

404 (D.D.C. 2015) (finding that a lawsuit served as a catalyst for the Government's production of

156 documents where it produced only two pages of responsive documents before litigation

commenced); Ellis v. United States, 941 F. Supp. 1068, 1077 (D. Utah 1996) (finding that where the Government's production of 169 pages of responsive documents was reasonably construed as deficient, the lawsuit was necessary to obtain further productions).  In light of these circumstances, Plaintiffs' prosecution of the present litigation was reasonably necessary and had a causative effect upon Defendants' release of the information sought in the two FOIA requests.

Additionally, Plaintiff secured a number of court orders and enforceable stipulated orders requiring timely production and disclosure of information, the very relief sought in the complaint. Specifically, Plaintiffs obtained Defendants' stipulation to produce the Category A documents responsive to the second FOIA request by July 25, 2017.  Joint Discovery Plan at 9.  The parties thereafter disputed Defendants' redaction of geographic information from the Category A and B documents—with Defendants rejecting Plaintiff's proposal to release a random, statistically representative sample of the geographic data.  See Defs. Resp. to Mot. for Summ. J. at 18 (Dkt. 34).  But through motion practice and further negotiation with Defendants, Plaintiffs succeeded in obtaining a stipulated order under which Defendants agreed to produce every fifth Category B document with geographic information intact.[3]  9/7/18 Stipulated Order at 2-3.  Additionally, the order required Defendants to produce the remaining Category C and D documents.  Id. at 4.

With respect to the production of the Category C and D documents, Plaintiffs prevailed in a significant dispute regarding the production pace.  Whereas Defendants sought a production timeline of over two years, the Court entered an order requiring production of the remaining Category C and D documents at a substantially accelerated pace over the course of 11 months. 11/26/18 Order.  Similarly, when Defendants sought an extension of the production schedule to

---

[3] Plaintiffs agreed to withdraw their challenge to Defendants' redaction of the Category A documents.  9/7/18 Stipulated Order at 2.

February 28, 2020 due to its negligent oversight, the Court required that the final production be made no later than February 14, 2020.  1/2/20 Order at 3-4.  Finally, Plaintiffs obtained stipulated orders in which Defendants agreed to un-redact certain information included within these productions, while Plaintiffs agreed not to challenge the redaction of other information.  See 10/29/19 Stipulated Order at 2-4; 3/23/20 Stipulated Order at 1-2.

Courts have held that where, as here, parties reach a joint stipulated order requiring the defendant's production of documents by a certain date, the plaintiff has substantially prevailed, as the order changes the legal relationship between the parties and because the plaintiff is "awarded some relief on the merits of his claim."  E.g., Davy v. Cent. Intelligence Agency, 456 F.3d 162, 164-165 (D.C. Cir. 2006).  Accordingly, Plaintiffs substantially prevailed in the litigation by obtaining the relief provided in the court orders and enforceable stipulated orders described above.[4]

Conceding that Plaintiffs substantially prevailed in certain limited aspects of the litigation, Resp. at 14 n.1, 15 n.3, Defendants nevertheless argue that Plaintiffs' eligibility for fees is limited to those few aspects in which they prevailed, id. at 12-15.  That is, Defendants maintain that Plaintiffs are ineligible to recover attorney fees for particular pieces of the litigation in which they did not prevail—for example, for their motion for interim attorney fees or their motion for sanctions, both of which were denied.  Id. at 15.  However, this piecemeal approach to evaluating

---

[4] As Defendants correctly argue, Plaintiffs cannot be found to have substantially prevailed based on orders requiring Defendants to produce Vaughn indices, Resp. at 13, which set forth information describing withheld documents and the basis for that withholding, see Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973).  Caselaw is clear that a court order requiring the Government to produce a "Vaughn index, without more, does not constitute court-ordered relief for a plaintiff on the merits of its FOIA claim," as it "does not change the legal relationship between the plaintiff and defendant."  Campaign for Responsible Transplantation v. Food & Drug Admin., 511 F.3d 187, 196 (D.C. Cir. 2007).  However, the Court's finding that Plaintiffs substantially prevailed is premised on orders unrelated to the production of Vaughn indices, including the order setting an accelerated production schedule.

eligibility "is not based in the statute, which clearly speaks about eligibility to receive attorneys'

fees for <u>cases</u>, not particular pieces of work within a case." <u>Conservation Force v. Jewell</u>, 160 F.

Supp. 3d 194, 207 (D.D.C. 2016) (emphasis in original).  Instead, the degree of a plaintiff's success

on a particular piece of work is relevant to the ultimate determination of whether the entire amount

of fees claimed is reasonable.  <u>Id.</u> at 208.

### 2.  The Equitable Factors Favor an Award of Fees

In evaluating a plaintiff's eligibility to recover attorney fees in connection with a FOIA

action, courts consider the following three equitable factors: "[1] the benefit to the public deriving

from the case; [2] the commercial benefit to the complainant and the nature of its interest in the

records; and [3] whether the agency's withholding [of the records] had a reasonable basis in law."

<u>GMRI</u>, 149 F.3d at 452 (internal quotation marks omitted).  "No one factor is dispositive, although

the court will not assess fees when the agency has demonstrated that it had a lawful right to

withhold disclosure." <u>Davy</u>, 550 F.3d at 1159.

The first factor evaluates the public benefit and assesses "both the effect of the litigation

for which fees are requested and the potential public value of the information sought."  <u>Id.</u>  To

have public value, the FOIA request must have "at least a modest probability of generating useful

new information about a matter of public concern."  <u>Morley v. Cent. Intelligence Agency</u>, 810

F.3d 841, 844 (D.C. Cir. 2016).  For example, information has public value where it "add[s] to the

fund of information that citizens may use in making vital political choices." <u>Cotton v. Heyman</u>,

63 F.3d 1115, 1120 (D.C. Cir. 1995).

The information sought in Plaintiffs' FOIA requests plainly serves the public benefit.

Plaintiffs maintain that they sought the requested information to evaluate how CBP implements its

authority, under 8 U.S.C. § 1357(a)(3) and 8 C.F.R. § 287.1(b), to conduct warrantless searches

and seizures within 100 air miles from international borders "to prevent the illegal entry of aliens into the United States." Mot. at 2. According to Plaintiffs, they sought this information to encourage law enforcement transparency and to investigate whether CBP is acting beyond the scope of its authority by conducting warrantless searches throughout the entirety of Michigan, far from the Canadian border. Id. at 2, 14-15. Such inquiries that call into question the policies and practices of law enforcement agencies and that seek to hold these agencies accountable are considered an important public benefit. See, e.g., Playboy Enters., Inc. v. U.S. Customs Serv., 959 F. Supp. 11, 16 (D.D.C. 1997). Document requests that promote governmental transparency fulfill the basic purpose of FOIA "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the government accountable to the governed." Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). Therefore, this factor weighs in favor of Plaintiffs.

The second factor weighs against a plaintiff who seeks disclosure of information for a commercial benefit or personal motives and instead favors "non-profit organizations . . . which 'aim to ferret out and make public worthwhile, previously unknown government information— precisely the activity that FOIA's fees provision seeks to promote.'" Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 999 F. Supp. 2d 61, 69 (D.D.C. 2013) (quoting Davy, 550 F.3d at 1160). It is undisputed here that Plaintiffs the Michigan Immigrant Rights Center and the ACLU of Michigan are both non-profit organizations committed to protecting civil liberties and civil rights. Mot. at 15. Likewise, Plaintiffs Dr. Boyce and Dr. Oglesby "are scholars who have analyzed the records obtained." Id. Because none of the Plaintiffs has a commercial interest in the information requested, this factor weighs in favor of Plaintiffs.

11

The final factor of the analysis requires courts to consider "whether the agency's opposition to disclosure had a reasonable basis in law," or, conversely, whether the agency was "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." Davy, 550 F.3d at 1162 (internal quotation marks and citation omitted). The question posed here "is not whether [a plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit." Urban Air Initiative, Inc. v. Envtl. Prot. Agency, 442 F. Supp. 3d 301, 319 (D.D.C. 2020) (internal quotation marks and citation omitted). If the agency's basis for withholding the records is correct as a matter of law, this factor is dispositive; however, if the agency's position is "founded on a colorable basis in law," this factor "will be weighed along with other relevant considerations in the entitlement calculus." Id. (internal quotation marks and citation omitted).

Defendants offer no legal basis establishing that their failure to timely disclose documents had a reasonable basis in law. When they produced the Category A documents eight months after the first FOIA request was made, Defendants deferred their production of the Category C and D documents and agreed to produce only one of every ten Category B document. See 1/12/16 Initial Response Letter. But Defendants did not explain the basis for their deferrals and failed to make any further productions or otherwise respond to the FOIA request for another 14 months. It was not until Plaintiffs filed suit that Defendants began producing the remainder of the documents. "Failing to explain the basis for deferring its response . . . until after [the plaintiff] file[s] suit is exactly the kind of behavior the fee provision was enacted to combat." Davy, 550 F.3d 1163 (holding that an agency's failure to respond to a FOIA request until after the plaintiff filed suit had no reasonable basis in law).

12

To the extent that Defendants' failure to produce documents in a prompt manner is attributable to administrative backlogs and a lack of adequate staffing, these explanations are unavailing. Requiring that courts evaluate an agency's rationale for withholding documents was intended to "incentiviz[e] the government to promptly turn over—before litigation is required— any documents that it ought not withhold." Urban Air, 442 F. Supp. 3d at 319 (internal quotation marks and citation omitted). Accordingly, "administrative delay and FOIA backlog do not form a 'reasonable basis in law' for withholding documents, because 'this purpose would not be served if it were reasonable for agencies to withhold documents for indeterminant periods of time because they have too many FOIA requests and too few FOIA staff members.'" Id. (quoting Reyes v. U.S. Nat'l Archives & Records Admin., 356 F. Supp. 3d 155, 167-168 (D.D.C. 2018)).

Defendants contend that their actions had a reasonable basis in law, broadly asserting that "[t]he dearth of merits litigation in this case illustrates that Defendants' legal positions have been reasonable, which mitigates Plaintiffs' entitlement to fees." Resp. at 16-17. Additionally, they argue that their withholding of geographic information, as advanced in the summary judgment briefing, was both reasonable and correct as a matter of law. Id. at 7-9, 17.

Defendants are wrong on both counts. As argued by Plaintiffs, the dearth of merits litigation demonstrates only that the parties resolved their disputes through negotiation rather than through judicial intervention. Reply at 1-2 (Dkt. 91). This does not necessarily establish that Defendants had a reasonable basis for withholding documents. In fact, Defendants' agreement to produce documents suggests the opposite—that they had no justifiable basis for withholding them. And although Defendants maintain that certain geographical information was properly withheld as protected from disclosure under FOIA Exemption 7(E), Plaintiffs vigorously disputed this issue, and the Court never ruled on the merits of the exemption. Even assuming that the exemption

applies, the protected geographic information represents only one isolated category of information, comprising an exceedingly small proportion of the overall production. Defendants have provided no justification for delaying their production of the thousands of other documents ultimately produced to Plaintiffs. See Campaign for Responsible Transplantation v. Food & Drug Admin., 511 F.3d 187, 243 (D.C. Cir. 2007) (noting that the agency "incorrectly focuses on the contested documents that it lawfully withheld under the appropriate FOIA exemptions and ignores the nonexempt documents that it delayed disclosing"). At no point have Defendants argued that other information disclosed was exempt from FOIA. Because Defendants have not established that the documents ultimately produced were exempt or that withholding was otherwise reasonable or correct as a matter of law, this factor weighs in favor of Plaintiffs.

Because Plaintiffs have established that they substantially prevailed in the litigation, and because the equitable factors favor an award of attorney fees, the Court finds that Plaintiffs are entitled to an award of reasonable attorney fees.

### B. Reasonableness of the Attorney Fees

Having determined that Plaintiffs are eligible to recover reasonable attorney fees incurred in connection with the litigation, the Court next evaluates the reasonableness of the fees claimed. Courts strive to fashion reasonable fee awards that are "adequately compensatory to attract competent counsel yet . . . avoid[] producing a windfall for lawyers." Adcock-Ladd v. Sec'y of Treasury, 227 F.3d 343, 349 (6th Cir. 2000). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Courts have discretion to adjust this "lodestar" calculation based on the particular facts of the case and the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th

Cir. 1974).  Adcock-Ladd, 227 F.3d at 349.[5]  However, the most significant factor guiding a court's analysis of the reasonableness of fees claimed is "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  Hensley, 461 U.S. at 435.  The party seeking an award of fees bears the burden of submitting sufficiently detailed evidence supporting the hours worked and the rates claimed.  Id. at 433.

In the present action, Plaintiffs seek an award of $410,405.20 in attorney fees and $1,168.65 in costs, representing a total of 1,075.62 hours of work performed by eight attorneys employed either by Dykema Gossett PLLC or by the ACLU of Michigan.  See Pls. Billing Records.  Defendants challenge both the hourly rates claimed by Plaintiffs' attorneys and certain categories of billing entries.  The Court addresses each of these matters in turn.

### 1. Hourly Rates

In determining an appropriate fee award, courts generally consider "the hourly rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Fuhr v. Sch. Dist. of City of Hazel Park, 364 F.3d 753, 762 (6th Cir. 2004) (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).  A fee applicant bears the burden of producing "satisfactory evidence—in addition to the attorney's own affidavits—that the

---

[5] Courts consider the following twelve factors:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Adcock-Ladd, 227 F.3d at 349 n.8 (quoting Reed v. Rhodes, 179 F.3d 453, 471-472 n.3 (6th Cir. 1999)) (internal quotation marks omitted).

requested rates are in line with" the prevailing market rate.  <u>Blum</u>, 465 U.S. at 896 n.11.  Once the plaintiff has made its showing, the burden shifts to the defendant to rebut the requested rate with "equally specific countervailing evidence."  <u>Covington v. District of Columbia</u>, 57 F.3d 1101, 1109-1110 (D.C. Cir. 1995).

Here, the hourly rates sought by Plaintiffs are drawn from two sources: (i) the 2017 State Bar of Michigan's Economics of Law Practice Summary Report (the "Michigan Bar Survey"), Ex. K to Mot. (Dkt. 89-12) and (ii) the National Law Journal's 2019 Survey of Law Firm Economics (the "National Survey"), Ex. H to Mot., at 22-25 (Dkt. 89-9).  As described in the affidavit of Heidi Naasko, Dykema's pro bono and diversity counsel, Plaintiffs primarily compare their requested rates to the 95th percentile of billing rates reported in the Michigan Bar Survey, based on the attorneys' years of experience, and to the median and upper quartile of billing rates reported in the National Survey for partners and associates in Michigan and the East North Central region.  <u>See</u> Naasko Decl., Ex. D to Mot., ¶¶ 29-34 (Dkt. 89-5).  The rates sought for the Dykema attorneys are either at or below their actual billing rates.  <u>See id.</u> at ¶¶ 4-6.  Plaintiffs seek comparable rates for the ACLU attorneys, based on their years of experience.  <u>Id.</u>; Mot. at 22-24.

Courts within this district frequently refer to the Michigan Bar Survey to establish the prevailing market rate for attorneys practicing in Michigan.  <u>See, e.g.</u>, <u>Davis v. Detroit Downtown Dev. Auth.</u>, No. 17-cv-11742, 2018 WL 5800919, at *2 (E.D. Mich. Nov. 6, 2018); <u>Meier v. Green</u>, No. 07-CV-11410, 2007 WL 2909418, at *2 (E.D. Mich. Oct. 5, 2007).  The Sixth Circuit has likewise approved of using the Michigan Bar Survey as a reliable indicator of prevailing market rates within Michigan.  <u>See, e.g.</u>, <u>Wallace v. Oakwood Healthcare, Inc.</u>, 954 F.3d 879, 899 (6th Cir. 2020).  Because counsel for Plaintiffs are Michigan attorneys practicing in Michigan, the

Michigan Bar Survey is the most appropriate authority by which to measure the prevailing rate in the relevant market.

Additionally, it is most appropriate to consult the 95th percentile of billing rates in establishing the hourly rates prevailing in the community for lawyers with skill, experience, and reputation comparable to Plaintiffs' counsel. Plaintiffs have supplied ample evidence documenting the impressive accomplishments of their attorneys. See Naasko Decl. ¶¶ 10-27; Andrade Decl., Ex. B to Mot., ¶¶ 2-5 (Dkt. 89-3); Aukerman Decl., Ex. E to Mot., ¶¶ 2-19 (Dkt. 89-6); Caballero Decl., Ex. F to Mot., ¶¶ 2-5 (Dkt. 89-7); Zhang Decl., Ex. G to Mot., ¶¶ 2-3 (Dkt. 89-8). They have also supplied declarations from practicing attorneys uninvolved in the present litigation, who attested to the reasonableness of the rates requested for ACLU attorneys Aukerman, Caballero, and Zhang. DeWaard Decl, Ex. I to Mot., ¶¶ 3-6 (Dkt. 89-10); Turner Decl., Ex. J to Mot., ¶¶ 5-10 (Dkt. 89-11).

Moreover, Plaintiffs' counsel brought their skills to bear on a complex matter. They were compelled to review voluminous productions to ensure Defendants' compliance with their FOIA obligations. Meeting with Defendants' recalcitrance in producing documents, Plaintiffs' attorneys were persistent in pushing for the disclosure of responsive documents, as described above.[6] Further, they extensively negotiated the disclosure of highly sensitive information pertaining to national security and border regulation. Given the nature of this information, Defendants

---

[6] Even before initiating suit, Plaintiffs diligently pursued the matter administratively. In light of Defendants' lack of response, Plaintiffs sent a letter on November 19, 2015, appealing the failure to make a timely determination regarding the FOIA request. 11/19/2015 Letter, Ex. H to Am. Compl. (Dkt. 22-9). Additionally, Plaintiffs filed an administrative appeal in February 2016 regarding the failure to produce the Category B, C, or D documents and challenging the application of three FOIA exemptions. 2/29/16 Appeal Letter, Ex. J to Am. Compl. (Dkt. 22-11). Defendants, however, closed those appeals, because the FOIA request was being processed. 5/9/16 Administrative Closure, Ex. K. to Am. Compl. (Dkt. 22-12); 9/30/16 Appeal Denial, Ex. L to Am. Compl. (Dkt. 22-13).

vigorously opposed disclosing certain information, such as the geographical information in the Category A and B documents.  Defendants specifically argued that this geographic information would reveal the location of law enforcement activities (e.g., locations of concentrated patrolling activities), which constitutes a technique or procedure protected from disclosure under FOIA exemption 7(E).  Defs. Mot. for Summ J. at 16-19.

When considering these attorneys' experience, professionalism, and performance, as well as the complexity of the case in light of the scope and nature of the FOIA requests, a billing rate "near or at the top of the market for legal representation" is well justified.  See B&G Mining, Inc. v. Director, Office of Workers' Compensation Programs, 522 F.3d 657, 665 (6th Cir. 2008).  Moreover, it is most appropriate to consult Table 4 of the Michigan Bar Survey, which lists hourly billing rates based on years in practice, given that an attorney's level of experience is the factor most rationally related to a billing rate.  See id. ("By looking . . . to the level of experience, an adjudicator could reasonably conclude that a more experienced attorney would command a higher market rate than a less seasoned one, ceteris paribus.").

Therefore, based on the 95th percentile of billing rates reflected in Table 4 of the Michigan Bar Survey, the appropriate billing rate for Samuel Damren, with 45 years of experience, is $510 per hour.  The appropriate billing rate for Dante Stella and Miriam Aukerman, with 21 years and 20 years of experience, respectively, is $475 per hour.  The appropriate billing rate for Corey Wheaton, with five years of experience, is $310 per hour.[7]  The appropriate billing rate for Nina Gavrilovic, Juan Caballero, and Monica Andrade each with three to four years of experience, is $325 per hour.  Finally, the appropriate billing rate for Jessica Zhang, as a law student, is $105 per

---

[7] Table 4 of the Michigan Bar Survey reports a billing rate of $325 per hour; however, Plaintiffs seek the lesser rate of $310 per hour for Wheaton.  See Mot. at 20.

hour.[8]  With the exception of the rate for Zhang, these billing rates are reasonably close to the

lower end of rates Dykema actually charges for work performed by similarly seasoned partners

and associates in its Detroit office.  See Naasko Decl. at ¶¶ 4-6.

Defendants contend that referring to the 95th percentile of billing rates reported in the

Michigan Bar Survey is unjustified, arguing instead that the median rates should apply given

Plaintiffs' limited success and the lack of complexity inherent in FOIA litigation.  Resp. at 20-21.

But as described above, the Court does not accept the premise that Plaintiffs' success was

"limited."  Further, awards at higher percentiles of billing rates are justified where, as here, counsel

is experienced in a specialized area of law and has obtained favorable results.  See Smith v.

Lexisnexis Screening Solutions, Inc., No. 13-CV-10774, 2015 WL 9459724, at *4 (E.D. Mich.

Dec. 28, 2015) ("Placing Plaintiff's counsel slightly above the 75th percentile seems reasonable in

light of counsel's experience and the firm's overall reputation and specialty in consumer law

practice.").  Although there are no recent FOIA fee awards in this district for comparison, the rates

awarded here are well below rates awarded in FOIA actions other markets.  See, e.g., New York

Times Co. v. Cent. Intelligence Agency, 251 F. Supp. 3d 710, 715 (S.D.N.Y. 2017) (finding

"$650/hour for a seasoned FOIA litigator with 14 years' experience" to be reasonable); Citizens

for Responsibility & Ethics in Washington v. U.S. Dep't of Justice, 80 F. Supp. 3d 1, 5 (D.D.C.

2015) (approving fees ranging from $600 to $655 per hour for "experienced, national experts in

---

[8] For Zhang, Plaintiffs seek a rate of $150 per hour, the Michigan Bar Survey's reported rate for
the 25th percentile of attorneys with less than one year of experience.  Mot. at 23-24.  However,
because Zhang is not yet a licensed attorney, a discounted rate of $105 per hour has been found to
be appropriate for high quality work performed by law students within Michigan.  See, e.g., Iswed
v. Caruso, No. 1:08-cv-1118, 2013 WL 12093132, at *3 (W.D. Mich. Feb. 14, 2013); see also
Tyson v. Sterling Rental, No. 13-cv-13490, 2015 WL 12819206, at *5 (E.D. Mich. Aug. 18, 2015),
rev'd in part on other grounds, 659 F. App'x 346 (6th Cir. 2016) (awarding an hourly rate of $100
for paralegal work).

FOIA litigation"); Sierra Club v. Envtl. Prot. Agency, 75 F. Supp. 3d 1125 (N.D. Cal. 2014) (awarding billing rates ranging from $350 to $650 per hour).

Consequently, the Court finds that the rates set forth above represent reasonable reflections of the prevailing market rates in Michigan for attorneys of similar caliber, performing similar services.

### 2. Billing Entries

"The key requirement for an award of attorney fees is that [t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." United States ex rel. Lefan v. Gen. Elec. Co., 397 F. App'x 144, 148-149 (6th Cir. 2010) (internal quotation marks omitted). While attorneys need not describe in great detail how each minute of time was expended, they should identify the general subject matter of their billing entries. Id. at 149. Additionally, courts determining whether hours were reasonable expended must "state with some particularity which of the claimed hours the court is rejecting, which it is accepting, and why." Rembert v. A Plus Home Health Care Agency, Inc., – F.3d – , 2021 WL 236602, at *3 (6th Cir. Jan. 25, 2021).

For each attorney involved in the action, Plaintiffs have submitted detailed billing records describing, in tenth-of-an-hour increments, the work performed on specific dates. Pls. Billing Records. Additionally, Plaintiffs submit a declaration from Thomas Burke, an attorney with extensive experience in complex federal FOIA litigation, regarding the reasonableness of the hours spent by Plaintiffs' counsel in achieving the results obtained. Burke Decl. ¶ 3 (Dkt. 89-4). Burke first explains that FOIA litigation is inherently time consuming due to the Government's tendency to seek protracted production schedules and the need for plaintiffs' counsel to negotiate with the

Government, review productions to assess whether further productions are necessary, and pursue undisclosed records. Id. at ¶¶ 10-11. Having reviewed the record in this case, as well as the billing records, Burke opined that Plaintiffs' counsel appropriately staffed the litigation and that the "hours expended by Plaintiffs' counsel were reasonable and necessary to obtain" the results achieved. Id. at ¶¶ 14-15, 17-21.

Defendants, however, challenge a number of categories of billing entries, which are discussed in the following sections. See Defs. Edited Billing Records, Ex. 1 to Resp. (Dkt. 90-1).

### a. Rule 8(b) Motion (Blue) & Erroneous Hours (Orange)[9]

Defendants object to an award of fees for approximately 15.7 hours incurred in connection with Plaintiffs' motion to deem certain allegations admitted under Federal Rule of Civil Procedure 8(b), a motion that was ultimately denied. Resp. at 15. Additionally, Defendants object to one billing entry of 1.8 hours relating to a Rule 37(b) motion. See Defs. Edited Billing Records. Plaintiffs, however, have stipulated that these billing entries were included in error and have removed them from their billing records. See Reply at 6-7; Pls. Billing Records. Accordingly, this issue is moot.

### b. Application for Interim Attorneys' Fees (Yellow)

Defendants maintain that because Plaintiffs' petition for interim attorney fees was denied in full, Plaintiffs are not entitled to an award of fees incurred in connection with it. Resp. at 15.

---

[9] With the exception of Corey Wheaton's billing entries, Defendants have categorized their disputes by color-coding the individual billing entries under dispute. See Defs. Edited Billing Records. For example, disputed billing entries relating to Plaintiffs' Rule 8(b) motion are highlighted in blue, while disputed billing entries that appear to have been included in error are highlighted in orange. Id. The Court has indicated the designated color for each category in each section heading.

In total, Defendants dispute billing entries totaling approximately 129 hours.  <u>See</u> Defs. Edited Billing Records.

Plaintiffs maintain that the hours incurred in preparing the interim fee petition are compensable because the work performed in preparing that petition was relevant to and used in the preparation of the present petition.  Reply at 6.  For example, the attorney declarations submitted as exhibits to the present petition were initially obtained for the interim fee petition.  Mot. at 20 n.6.  The Court's review of the interim fee petition demonstrates a high degree of overlap with the current petition.  <u>Compare</u> Interim Fee Petition (Dkt. 62) <u>with</u> Mot.  Further, billing entries related to the current petition indicate that Plaintiffs' counsel made updates to the interim fee petition, rather than starting from scratch.  <u>See</u> Pls. Billing Records.  Additionally, although the petition for an award of interim attorney fees was denied, it was not without merit. Relying on many of the same arguments raised in the interim fee petition, Plaintiffs have ultimately succeeded in obtaining a fee award in connection with their present motion.  Accordingly, the work performed in connection with the petition for an award of interim attorney fees is compensable.

### c.  Motion for Sanctions (Red)

Defendants maintain that Plaintiffs are not entitled to an award of fees incurred in connection with Plaintiffs' motion for sanctions because, at the time the briefing was submitted, the motion had not been granted.  Resp. at 15.  The motion for sanctions has since been denied. 9/21/20 Opinion (Dkt. 92).  In total, Defendants dispute 52.2 hours related to preparing the motion for sanctions.  <u>See</u> Defs. Edited Billing Records.

The Supreme Court has stated that a "fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."  <u>Hensley</u>, 461 U.S. at 435. That is, "where the plaintiff's claims for relief involve common facts or related legal theories, such

that much of counsel's time will have been devoted generally to the litigation as a whole, the court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 552 (6th Cir. 2008) (internal quotation marks omitted). Thus, "a plaintiff is not to be denied full attorneys' fees merely because he lost some interim rulings en route to ultimate success." Alliance to End Repression v. City of Chicago, 356 F.3d 767, 770 (7th Cir. 2004). A party is not foreclosed from obtaining attorney fees expended in connection with a motion on which the party did not prevail:

> The question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.

Wooldridge v. Marlene Indus. Corp., 898 F.2d 1169, 1177 (6th Cir. 1990), abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources, 532 U.S. 598 (2001); see also Garcia v. Renaissance Global Logistics, LLC, No. 10–13122, 2012 WL 1130543, at *4 (E.D. Mich. Apr. 4, 2012) (declining to reduce fee award for time spent on unsuccessful motion for summary judgment).

Plaintiffs filed their motion for sanctions at the Court's invitation after Defendants filed their motion seeking an extension of the production timeline. See 1/2/20 Order at 4. In the motion, Plaintiffs sought relief in the form of conditional monetary fines to be imposed if Defendants failed to meet the court-ordered deadlines for producing documents. See Mot. for Sanctions at 3-4 (Dkt. 79); Reply to Mot. for Sanctions at 2 (Dkt. 83). In light of Defendants' documented reluctance to produce the documents at issue, Plaintiffs were reasonably justified in believing this motion was necessary to compel Defendants' compliance. Stated differently, the motion was filed in aid of

Plaintiffs' successful mission to obtain timely production of the documents.  The fact that the motion was denied does not mean it did not produce some benefit, and it certainly does not diminish the Plaintiffs' ultimate success.[10]  Thus, Plaintiffs are entitled to fees incurred in connection with the motion for sanctions.

### d.  Pre-Filing Matters (Purple)

Next, Defendants argue that the hours reported for pre-filing activities are excessive—Plaintiffs claim 166.3 hours of work, accumulating fees of $68,000.  Resp. at 21.  The disputed hours reflect billing entries related, among other things, to: (i) drafting and editing the complaint, (ii) conferences to discuss the complaint, (iii) reviewing Defendants' responses to the FOIA request, and (iv) researching FOIA issues pertaining to filing the complaint.  See Defs. Edited Billing Records.  According to Defendants, Plaintiffs' pre-filing fees should be capped at 20 hours, at a rate of $250 per hour, for a total of $5,000.  Resp. at 18.

Defendants cite a number of cases limiting the number of hours that reasonably may be billed in connection with filing a FOIA complaint.  See, e.g., Hall & Assocs. v. Envtl. Prot. Agency, No. 15-286, 2016 WL 10746643, at *6-7, *7 n.7 (D.D.C. Mar. 7, 2016) (holding that 43 hours spent drafting and filing complaint was properly reduced to 24 hours); Elec. Privacy Info. Center v. Fed. Bureau of Investigation, 80 F. Supp. 3d 149, 158 (D.D.C. 2015) (holding that 18.4 hours for drafting a FOIA complaint was excessive and reducing the award to compensate for 9.5 hours); Smith v. Ashcroft, No. 1:02CV0043, 2005 WL 1309149, at *4 (W.D. Mich. May 25, 2005) (holding that devoting more than 70 hours and billing more than $11,000 for drafting a FOIA

---

[10] Given the nature of the sanctions sought, it is not unreasonable to conclude that Plaintiffs' motion provided additional motivation for Defendants to meet the final production deadline.

complaint is "far beyond what would be reasonable for such a straightforward task"). However, these cases concern hours expended exclusively drafting and filing the complaint.

The disputed billing entries in the present action, by contrast, involve not only drafting the complaint but also reviewing Defendants' initial response to the FOIA request, completing pre-filing research, editing the complaint, and communicating with other attorneys regarding litigation strategy. See Defs. Edited Billing Records. Defendants do not acknowledge that the billing entries encompass these additional activities, nor do they explain whether the hours devoted to these activities were excessive. When these tasks are considered as a whole, the 166.3 hours reported by Plaintiffs do not appear excessive. Put in perspective, 166.3 hours is roughly equivalent to one attorney spending approximately one month working exclusively on this matter. Given the complexity of the action, the Court does not consider this amount of time to be excessive. Therefore, these hours are compensable and are not subject to reduction.

### e. Summary Judgment Briefing (Tan)

Defendants contend that Plaintiffs' fees incurred in connection with the summary judgment briefing concerning Defendants' redaction of geographical information should be reduced by 50% to account for the efforts and concessions of both parties in achieving resolution. Resp. at 18. Defendants emphasize that Plaintiffs reduced their request for documents reflecting geographic information by 80%. Id. at 8-9.

This is not a ground for reducing fees incurred by Plaintiffs. Although Plaintiffs ultimately made concessions for the sake of resolving the dispute, their efforts in preparing the summary judgment briefing resulted in Defendants' agreement to produce a subset of the geographic data. 9/7/18 Stipulated Order at 2-3. As stated above, the applicable standard is whether the work performed was "reasonably expended in pursuit of success." Wooldridge, 898 F.2d at 1177.

Because Plaintiffs' efforts in connection with the summary judgment briefing resulted in obtaining part of the relief sought in the action, these fees are compensable in their entirety.

Additionally, Defendants argue that the time billed in connection with the summary judgment briefing was excessive—including 132.3 hours preparing the 25-page opening brief and 65.5 hours preparing a 15-page reply.  Id. at 21-22.  Defendants maintain that 60 hours would be reasonable.  Id. at 18, 22 (citing Gahagan v. U.S. Citizenship & Immigration Servs., No. 14-2233, 2016 WL 1110229, at *17 (E.D. La. Mar. 22, 2016) (imposing a 25% reduction to 63.38 hours for FOIA summary judgment briefing); Sierra Club, 75 F. Supp. 3d at 1151 (reducing the hours expended on preparing a FOIA summary judgment briefing from 57.9 hours to 40 hours)).

The nearly 200 hours Plaintiffs' counsel devoted to the summary judgment briefing do not appear to be excessive.  The disputed billing entries include hours devoted to (i) researching and drafting the briefs, (ii) preparing the declarations and exhibits, (iii) reviewing Defendants' briefing, (iv) preparing the reply brief, (v) conferring with co-counsel, (vi) preparing for and attending the motion hearing, and (vii) completing post-hearing research regarding FOIA exemptions.  Defs. Edited Billing Records.  Again, put into perspective, the 200 hours devoted to these tasks are roughly equivalent to one attorney spending approximately five weeks working exclusively on these matters.  Such a time investment is not unreasonable given the significance of the relief at stake in these motions.  Nor is it unreasonable in light of the well-researched, thorough, and high-quality briefing produced in connection with this issue.  Moreover, as stated by the Supreme Court, "[t]he government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by [an adversary] in response."  City of Riverside v. Rivera, 477 U.S. 561, 580-81 n.11 (1986).  Therefore, Plaintiffs are entitled to recover the full amount of fees incurred in connection with the summary judgment briefing.

### f. Corey Wheaton's Billing Entries

Defendants note that Wheaton's billing entries appear to include inflated hours and errors. Resp. at 22.  While the parties do not dispute that Plaintiffs have voluntarily reduced the number of hours claimed for Wheaton by 20%, Defendants maintain that his billing inflation regularly exceeds 20% and contend that his hours should be halved across the board to account for these issues. Id. at 22-23.

Defendants specifically dispute Wheaton's inflation of time spent in several conferences, for which he recorded hours higher than other attorneys involved in the same conference.  Id. at 22 n.8; see, e.g., Defs. Edited Billing Records at PageID.2284, 2297, 2304 (billing 2.1 hours for a February 27, 2017 conference call that Aukerman and Damren reported as lasting 0.7 hours). Additionally, Defendants dispute Wheaton's billing entries for, among other things, researching and drafting a motion that was never filed, researching issues that were never raised in the summary judgment briefing, and devoting an excessive amount of time to a three-page stipulated discovery plan that did not require any discovery.  Resp. at 22, n.8.  Specifically, on June 21, 2017, Wheaton billed 6.1 hours for researching and drafting a motion for a new schedule, with no corresponding motion appearing on the Court's docket.  See Defs. Edited Billing Records at PageID.2305.  Between May 1, 2017 and May 25, 2017, Wheaton billed 13.3 hours for completing "Vaughn index research" in connection with Plaintiffs' response to Defendants' motion for summary judgment, see id., even though there were no issues regarding the production of Vaughn indices raised in that motion or response, see Defs. Mot. for Summ. J.; Pls. Resp. to Mot. for Summ. J. (Dkt. 37).  And between July 18, 2017 and August 3, 2017, Wheaton billed 14.1 hours for drafting and editing a stipulated order, Defs. Edited Billing Records at PageID.2306, that required no productions from Defendants, see 8/4/17 Joint Disc. Plan.

Plaintiffs do not offer an explanation accounting for these billing discrepancies beyond asserting that they have previously accounted for these errors with a 20% reduction in Wheaton's hours.  Reply at 8.  Defendants have demonstrated that Wheaton inflated hours and expended an inordinate amount of time on at least one straightforward matter.  Further, Plaintiffs seek fees for hours that Wheaton devoted to work that appears to have been unnecessary.  Counsel for prevailing parties seeking attorney fees must "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," given that "[h]ours that are not properly billed to one's <u>client</u> are not properly billed to one's <u>adversary</u> . . . ."  <u>Hensley</u>, 461 U.S. at 434 (emphasis in original).  Because Plaintiffs did not exercise reasonable billing judgment with respect to many of Wheaton's billing entries, the Court finds it appropriate to reduce Wheaton's claimed hours by 50%.

### g.  Document Review (Pink and Green)[11]

Defendants argue that time spent reviewing documents produced in response to a FOIA request is non-compensable.  Resp. at 23.  Defendants cite <u>American Immigration</u>, which held that because a FOIA plaintiff would be compelled to expend time reviewing documents if they had been timely produced without litigation, "the cost of reviewing documents produced in response to a FOIA request—to see if they are responsive or for other reasons—is simply the price of making such a request."  82 F. Supp. 3d at 412.  Thus, the court deducted charges for time plaintiff's counsel spent determining "whether the documents were relevant to [the plaintiff's] request, whether Defendants' search terms were yielding adequate results, and whether Defendants' asserted exemptions were appropriate."  <u>Id.</u>

---

[11] While disputed entries related to reviewing document productions are marked in pink, some additional entries are marked in green (used to designate vague entries).

Plaintiffs argue that time spent assessing Defendants' compliance with their FOIA obligations, as distinguished from simply reviewing documents for their content, is compensable. Reply at 7.  In ACLU Immigrants' Right Project v. U.S. Immigration & Customs Enforcement, No. 16-cv-06066, 2018 WL 488997, at *3 (N.D. Cal. Jan. 19, 2018), the court recognized a split in authority on this issue.  Some courts, such as the court that decided American Immigration, have held that time spent reviewing documents produced in connection with a FOIA request are not compensable as litigation costs.  Id.  Other courts, however, have held that hours spent reviewing documents disclosed during the course of active FOIA litigation are compensable.  Id. (citing ACLU of N. Cal. v. Drug Enforcement Admin., No. 11–01997, 2012 WL 5951312, at *5 (N.D. Cal. Nov. 8, 2012); Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 811 F. Supp. 2d 216, 239-240 (D.D.C. 2011)).  In holding that the time plaintiffs' counsel devoted to post-production document review was compensable, ACLU Immigrants harmonized these differing lines of opinions:

> The Court generally agrees with both lines of cases.  A prevailing plaintiff is not entitled to recover fees for merely having its attorney review the documents. However, when a defendant produces documents during FOIA litigation, plaintiff's counsel must review the documents to determine if the production ends the litigation or if there are still compliance issues that necessitate further litigation. Such costs are litigation costs.

Id. at *4.

This Court agrees that time spent reviewing produced documents for FOIA compliance constitutes a compensable litigation cost.  As explained in ACLU of Northern California, it is illogical to suggest otherwise, as "[w]ithout review of the documents produced, plaintiffs would [be] unable to ascertain whether defendant[s] had complied fully with [a] FOIA request and thus unable to determine what issues needed to be litigated." 2012 WL 5951312, at *5.  The importance of reviewing productions to ensure compliance is particularly pronounced where, as here, agencies

have been sluggish in meeting their FOIA obligations.  Plaintiffs, therefore, are entitled to recover attorney fees incurred in reviewing the produced documents to ensure Defendants' compliance with their FOIA obligations.

### h.  Vague Entries (Green)

Finally, Defendants dispute a variety of billing entries on the ground of vagueness.  Resp. at 23-24.   A non-exhaustive sampling of the descriptions for these disputed entries include (i) "FOIA exemption research," (ii) "litigation team call," (iii) "drafted memo describing FOIA request findings," (iv) "communications with Ms. Aukerman," (v) "review of information from Ms. Aukerman," (vi) "research category C search terms," and (vii) "call with C.R."   See Defs. Edited Billing Records.   Additionally, Defendants complain that some of Aukerman's billing entries appear to have been supplemented after the fact to provide additional detail.  Resp. at 24. Defendants maintain that these hours must be excluded because they were not recorded contemporaneously with the time being recorded.  Id.

While counsel need not "record in great detail each minute he or she spent on an item, the general subject matter should be identified."  Imwalle, 515 F.3d at 553 (internal quotation marks and citations omitted).   However, even where the descriptions for each billing entry are not "explicitly detailed," the Sixth Circuit has upheld attorney fee awards when "the attorney provided the court with computerized calendars and file information indicating the dates and times of work performed."  Id. (internal quotation marks and citation omitted).  For example, the Sixth Circuit upheld a fee award where the billing descriptions were cursory (e.g., "Conference with," "Research," "Review file," "Review documents,"), but the 52 pages of itemized billing records specified the date the time was billed, the individual who billed the time, the fractional hours billed, and the general nature of the task completed.  Id. at 553-554.

Here, Plaintiffs have submitted 40 pages of detailed billing records indicating the attorney who billed the time, the case name, the dates the hours were billed, the time billed in tenth-of-an-hour increments, and the general nature of the tasks performed.  See Pls. Billing Records.  Naasko and the ACLU attorneys submitted declarations stating that the billing records accurately reflect the time spent working on this case.  Naasko Decl. ¶ 28; Andrade Decl. ¶ 6; Aukerman Decl. ¶ 24; Caballero Decl. ¶ 6; Zhang Decl. ¶ 4.  Further, the billing records document time entries beginning in January 28, 2015 and ending on August 6, 2020, the period of time corresponding to the submission of the first FOIA request through the most recent filing in the litigation.  See id.  When reviewed in the context of the litigation timeline, the billing entries support a determination that the hours recorded were reasonably expended in connection with the litigation.

Defendants' argument that Aukerman's modification of certain billing entries renders them non-contemporaneous plainly lacks merit.  Aukerman certifies that she recorded her billing entries contemporaneously.  Aukerman Decl. ¶ 24.  The fact that the descriptions were later supplemented does not invalidate them.  As noted by Plaintiffs, Defendants complained in their opposition to the petition for interim attorney fees that certain billing descriptions contained insufficient detail, Resp. to Interim Fee Petition at 21-22 (Dkt. 64); now they complain that additional detail was supplied.  And although Defendants cite Imwalle in support of their position, that case merely states that attorneys must keep contemporaneous records of their time—it does not stand for the proposition that an attorney may not supplement a contemporaneously recorded billing entry after the fact.  See 515 F.3d at 553.  Therefore, Plaintiffs may recover attorney fees for these billing entries.

### III.   CONCLUSION

For the reasons stated above, Plaintiffs' joint petition for attorney fees and costs is granted in part (Dkt. 89).  The parties are directed to confer and, within 30 days of entry of this opinion, submit a proposed order setting forth an updated calculation of Plaintiffs' recoverable attorney fees and costs, consistent with the determinations in this opinion.  If they cannot agree on the form of the order, the parties must file a joint statement explaining the points of disagreement.

SO ORDERED.

Dated:  March 8, 2021                              s/Mark A. Goldsmith
     Detroit, Michigan                          MARK A. GOLDSMITH
                                United States District Judge